## COMMONWEALTH *vs.* BURNHAM WARDWELL.

Worcester.   Oct. 2. — Dec. 4, 1883.   FIELD & W. ALLEN, JJ., absent.

An indictment alleged that the defendant, " contriving and unlawfully and mali-ciously intending to injure, vilify, and prejudice one S., and to deprive him of his good name, fame, credit, and reputation, and to bring him into great contempt, scandal, infamy, and disgrace, he the said S. being then and there sheriff of the county of W., and also keeper of the jail and house of correction at W., unlawfully and maliciously did publish, and cause and procure to be published, a false, scandalous, malicious, and defamatory libel, containing divers false, scan-dalous, malicious, and defamatory matters and things of and concerning the said S." *Held*, that the indictment alleged a libel upon S. in his private, and not in his official capacity.

An alleged libel upon a person holding a public office charged him with being " an untruthful man," " a profane man," " a libertine; " with "ruining a young and innocent lady ; " with "boasting of the influence of his office, money, and friends being sufficient to crush any one who should attempt to expose him ; " and with drawing " a pistol on a virtuous Christian lady, in the presence of men and women, for no cause other than exposing him in a crime which would send him to the State Prison as a criminal." *Held*, that these charges related to the per-son named in his private, and not in his official capacity.

A communication, containing charges against the private character of a person holding a public elective office, published more than a year before the occur-rence of the next election, although he has not disclaimed his intention to be a candidate for reëlection, is not made upon a privileged occasion, and is not *prima facie* privileged.

At the trial of an indictment for libel, in publishing a communication containing charges against the private character of a person holding a public elective office, the good faith of the defendant in making the publication has no tendency to show that it was made upon a privileged occasion ; and, if the presiding judge decides that the occasion was not such as to render the publication privileged, he is not required to make any assumption as to the defendant's good faith.

If the granting of a request for a ruling and the refusal of another request for a ruling are contradictory, and the refusal was right, the contradiction is in favor of the requesting party, and he has no ground of exception.

INDICTMENT, alleging that the defendant, on September 7, 1882, at Worcester, " contriving and unlawfully and maliciously

intending to injure, vilify, and prejudice one Augustus B. R. Sprague of Worcester," "and to deprive him of his good name, fame, credit, and reputation, and to bring him into great contempt, scandal, infamy, and disgrace, he the said Sprague being then and there sheriff of our said county of Worcester, and also the keeper of the jail and house of correction at Worcester aforesaid, unlawfully and maliciously did publish, and cause and procure to be published, a false, scandalous, malicious, and defamatory libel, containing divers false, scandalous, malicious, and defamatory matters and things of and concerning the said Augustus B. R. Sprague." The indictment then set forth the libel, the material parts of which were as follows:

"In the name of humanity I feel called on to prefer charges against A. B. R. Sprague, sheriff and jailer, Worcester county, Massachusetts. 1. I charge him with being an untruthful man. 2. I charge him with being a profane man. 3. I charge him with being a common drinker of intoxicating liquors. 4. I charge him with treating prisoners placed under his charge cruelly, wickedly, shamefully. 5. I charge him with being a libertine, even making the jail a place of prostitution. 6. I charge him with ruining a young and innocent Worcester lady. 7. I charge him with boasting of the influence of his office, money, and friends being sufficient to crush any one who should attempt to expose him. 8. I charge him with employing men as officers who are untruthful, bad men. 9. I charge him, or any other man, with being a coward, who will draw a pistol on a virtuous Christian lady, in the presence of men and women, for no cause other than exposing him in a crime which would send him to the state prison as a criminal. Some, or I will say many, of the acts of cruelty committed in Worcester county jail have been most cruel, even ruinous to the health of prisoners. As to the management of the property of the county, I am told he is neither honest or prudent. I, however, care nothing about property. I have met one young man who was ruined in health for life in consequence of bad treatment in Worcester county jail under Sheriff Sprague, and hear of many others who have been badly treated. I make these charges perfectly free from anger towards Sheriff Sprague or any human being."

The indictment concluded as follows: "The letters and word 'A. B. R. Sprague,' in said libel, meaning the said Augustus B. R. Sprague. The said Burnham Wardwell then and there well knowing the said defamatory libel to be false, to the great scandal and disgrace of the said Augustus B. R. Sprague."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, for the reason that the publication alleged to be libellous referred to Sprague only in his official capacity, and the allegations of the indictment referred to him in his private capacity. *Gardner*, J., overruled this motion; and the defendant excepted.

At the trial, the government introduced evidence tending to show that the defendant, who was then a resident of Worcester, caused the alleged libel to be printed and circulated in Worcester.

The government called Sprague as a witness, who testified that he was first appointed sheriff of Worcester county in June, 1871, and had held the office ever since; that he had been jailer and keeper of the house of correction in Worcester for the last seven years, during which time he had lived with his family at the jail.

On cross-examination, he testified that the next election for sheriff would be at the general election in November, 1883; that he could not say whether he would be a candidate for reëlection in 1883; and that he would not disclaim his intention of being a candidate.

The defendant asked the judge to rule that, taking the fair meaning of the whole publication, the charge related to Sprague in his official capacity; that, as the allegations of the indictment referred to him in his private capacity, the evidence did not tend to prove the charges; and that, upon a fair meaning of the words thereof, no malice could be presumed in law.

The judge refused to rule as requested, and ruled that the indictment set out a libel against Sprague in his individual and private capacity, and not in his capacity as sheriff or jailer of the county, and that the allegation that he was such officer was merely descriptive; that those charges in the alleged libel relating to the misconduct of Sprague in his official capacity should be stricken out and excluded from the consideration of the jury, this ruling excluding the fourth and eighth charges, and the

following sentences: "Some, or I will say many, of the acts of cruelty committed in Worcester county jail have been most cruel, even ruinous to the health of the prisoners. As to the management of the property of the county, I am told he is neither honest or prudent. I, however, care nothing about property. I have met one young man who was ruined for life in consequence of bad treatment in Worcester county jail under Sheriff Sprague, and hear of many others who have been badly treated." At the request of the defendant, the third charge was also excluded, as containing nothing libellous. To this ruling defendant excepted, so far as it related to the other charges not excluded.

The defendant then requested the judge to rule, as matter of law, as follows: "1. The occasion of the publication was such as to make it privileged. 2. The publication was a privileged communication, for the making of which the defendant is not criminally liable. 3. The publication was a privileged communication. 4. Assuming that the publication was made in good faith, without malice, and in the belief that it was true, then it was a privileged communication. 5. In deciding upon each of these foregoing requests, it is the duty of the court to assume that the publication was made in good faith, without malice, and in the belief that it was true."

The judge gave the fourth ruling requested; refused to give the others; and ruled that the defendant could not be convicted, without proof of malice; but that if the publication was libellous, that is, such as to bring the person libelled into hatred and contempt among the people, malice was presumed from the act of publication, the truth or other justification not being set up.

The defendant then offered evidence tending to show that some of the charges (not excluded) were true; and the government offered evidence tending to contradict the defendant's evidence, and to show that the publication was made with actual malice, and with an intent to injure Sprague.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. B. Gale & J. P. Gale*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

COLBURN, J. The motion to quash was rightly overruled. The indictment alleges a libel upon Mr. Sprague in his private capacity, and a large part of the publication obviously relates to him in that capacity. A person cannot be untruthful, profane, or a libertine in his official capacity. These are attributes of his moral character as a man, not as an officer, though they may render him unfit to hold the office.

The judge was right in ruling that the first, second, fifth, sixth, seventh, and ninth charges in the publication relate to Mr. Sprague in his private capacity.

The defendant contends that the publication was privileged, for the reason that Mr. Sprague held an elective office, and had not disclaimed his intention to be a candidate for reëlection; that he might be considered to be such a candidate, if he did not disclaim it; that, in becoming a candidate, he must be considered as putting his character in issue, so far as it might affect his fitness and qualification for the office; that it was the duty and privilege of a voter publicly to criticise and condemn his character or conduct, and to publish any statement of facts within his knowledge or belief which tended to show his qualifications for the office; that it was only necessary that they should be published to the voters of the county in good faith, and without malice, to render them *prima facie* privileged communications; and that, for this reason, the first, second, third, and fifth requests for rulings should have been granted.

Though we might not be disposed to dissent from the defendant's claim, if the occasion were such as to render the publication privileged, we are of opinion that, in the case before us, no such occasion is shown. Mr. Sprague held an office of three years' tenure; an election would not occur for more than a year; he had neither declared nor disclaimed his intention to be a candidate for reëlection. So far as appears, the question of an election was in no way being agitated, and it would be carrying the doctrine of privilege to an unwarranted extent to hold, as we are asked to do by the defendant, that Mr. Sprague was presumably a candidate for reëlection, and that the charges made against his private character, affecting his qualifications for the office, as set forth in the indictment, were made upon a privileged occasion, and were *prima facie* privileged.

When a person is in fact before the public as a candidate for an office, and especially during the usual canvass which precedes an election, we have no doubt that much latitude should be allowed in publishing, for the information of voters, charges affecting the fitness of the candidate for the office, on account of moral character, and in holding the occasion to be such as to render the publication *prima facie* privileged. But to hold that every person holding an elective office, from the Governor of the Commonwealth to a constable, as soon as he enters upon the duties of his office, if he does not disclaim being a candidate for reëlection, is subject to have his moral character assailed in any and every respect which would disqualify him for the office he holds, under the claim that it is upon a privileged occasion, would not tend to promote purity of elections, or the election to office of persons of the requisite qualifications, but would tend to induce all persons having self-respect, and a desire to lead a life of ordinary tranquillity and freedom from reproach, to decline to hold, or be a candidate for, an elective office.

It is true that the contention of the defendant, that Mr. Sprague might be considered a candidate for reëlection, is supported by a dictum of Chief Justice Parsons in *Commonwealth* v. *Clap*, 4 Mass. 163, 169; but, notwithstanding the great respect which even a dictum of that eminent judge should receive, we are unable to assent to the defendant's contention.

The defendant's first request for a ruling, as matter of law, that the occasion of the publication was such as to make it privileged, was rightly refused, and from this the refusal of the second and third requests necessarily followed. In determining the question whether the occasion was such as to make the publication privileged, it was unimportant, under the circumstances of this case, for the court to assume that it was made in good faith. The good faith of the defendant in making the publication had no tendency to show that the occasion was one upon which it might be made under the protection of privilege. If it had been determined that the occasion was such as to render a publication privileged, then, in determining whether this was a privileged publication, the court must have assumed that it was made in good faith, leaving the question of malice to the jury. But the court, having rightly determined that the occasion was

not such as to render the publication privileged, was not re-quired to make any assumption as to the good faith of the defendant. For these reasons, we think the fifth request for rulings was also properly refused.

If it is true, as the defendant contends, that the granting of the fourth request for a ruling, and the refusal of the other re-quests, were contradictory, as we have held that the refusal was right, the contradiction was in the defendant's favor, and he has no ground for complaint.          *Exceptions overruled.*