RONALD M. MIHALIK *vs.* LAWRENCE W. DUPREY[1] & others.

Hampden.   January 12, 1981. — March 25, 1981.

Present:  GRANT, CUTTER, & DREBEN, JJ.

*Libel and Slander.   Constitutional Law,* Libel.

A school committee member could not recover in a libel action for state-
    ments published in a teachers' association news letter where the state-
    ments, taken separately, were true and, taken in the aggregate as in-
    sinuating official misconduct, were too vague and uncertain to be the
    basis of a libel action by a public official.  [603-608]

CIVIL ACTION commenced in the Superior Court on
June 16, 1977.

The case was tried before *Moriarty,* J.

*Maurice M. Cahillane, Jr.,* for the defendants.

*Patricia Angel Best* for the plaintiff.

CUTTER, J.  Mihalik, an elected member of the Holyoke
school committee, brought this action against (a) Duprey,
president, and (b) Theodore Williamson, vice president, of
Holyoke Teachers Association (HTA), and also (c) HTA it-
self.  Mihalik seeks to recover for alleged defamation by an
article entitled "Riddle" published about December 14,
1976, in HTA's news letter.  The defendants' amended
answer alleges that the statements in the riddle are true.

The mimeographed news letter, published at a time
when labor negotiations were going on between HTA and
the school committee, contained the following item —
"Riddle — [C]lue 1.  Which elected city official does not
live within . . . the ward from which he was elected?
[C]lue 2.  This person does not have children in the public

---

[1] Duprey, on motion, received judgment notwithstanding the verdict in
favor of Mihalik.  The action has been dismissed against him.  He is not
concerned in this appeal.

schools . . .. [C]lue 3. He went from provisional city employee to foreman almost overnight. [C]lue 4. He is having the Trade School make him furniture for his home. [C]lue 5. It's not the fence watcher. Answer next news letter, maybe." See note 3, *infra.* Williamson, the author of "Riddle", testified that he intended it to refer to Mihalik and thought it would not be embarrassing to him.

The trial judge without objection charged (1) that it was undisputed that the separate statements in the riddle "were not defamatory" and, indeed, "were true, taken individually," and (2) that it was for the jury to decide whether "in context, taken together," the clues in the riddle "contain a defamatory meaning" in that they conveyed "to some respectable and considerable segment of the community" the "impression" that Mihalik "misused the power of . . . a school committeeman for his personal gains." The jury were told in effect that there was "no evidence" that Mihalik was misusing the power of his office for personal gain, and that "the defendants have the burden of proving the truth" of what was a "false impression" if that impression was conveyed. The judge also charged that Mihalik was a public official and that he, by clear and convincing evidence, must prove that any defamatory impression conveyed by the riddle must be shown to have been known by Williamson to have been false or to have been made with reckless disregard of whether it was true or false.

A motion for a directed verdict was denied. The jury, in answer to special questions, found (1) that the riddle did convey the "impression" to a "considerable and respectable class in the community" that Mihalik "was improperly using his office . . . for his personal gain or advantage," and (2) that Williamson wrote the riddle "with knowledge that the impression of impropriety was false or with a reckless disregard of whether that impression was false." The jury found that $1,750 would "reasonably compensate" Mihalik for any harm to his reputation.

In light of the judge's charge that each of the "clues" for the riddle, read individually, was true, the jury must have

concluded that the clues, in the aggregate, insinuated a defamatory meaning. In other contexts such individually truthful, but inadequately explained, statements might collectively be found to have amounted to a "half truth . . . tantamount to a falsehood." See *Kannavos* v. *Annino*, 356 Mass. 42, 47-50 (1969), quoting (at 47) Qua, J., in *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942). In the circumstances of this case, however, we consider whether the individual clues properly can be viewed collectively and, if so viewed, whether they reasonably can be found to be either false or actionable within the purview of the current defamation cases involving a public official.

The earlier Massachusetts cases on defamation recognized liability "for what is insinuated as well as for what is stated expressly." See *Merrill* v. *Post Publishing Co.*, 197 Mass. 185, 193 (1908); *Poland* v. *Post Publishing Co.*, 330 Mass. 701, 704 (1953; particular statement held not defamatory); Restatement (Second) of Torts §§ 559, 563, Comments *d, e,* and *f*, § 573 (1977). See also *Muchnick* v. *Post Publishing Co.*, 332 Mass. 304, 306 (1955); *Tripoli* v. *Boston Herald-Traveler Corp.*, 359 Mass. 150, 153 (1971); *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 143-144 (1974); *Roketenetz* v. *Woburn Daily Times, Inc.*, 1 Mass. App. Ct. 156, 164 (1973). Compare *Colby Haberdashers, Inc.* v. *Bradstreet Co.*, 267 Mass. 166, 170-171 (1929); *Tropeano* v. *Atlantic Monthly Co.*, 379 Mass. 745, 751 (1980); *Borski* v. *Kochanowski*, 3 Mass. App. Ct. 269, 272-273 (1975). Erosion (see Restatement [Second] of Torts § 581A, at 236 [1977]), however, of some aspects of the earlier decisions has followed the decision in *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 273, 279 (1964). The earlier law has been affected most significantly where the allegedly defamed person is a public official or a public figure and the allegedly defamatory material relates to official conduct or to relevant related subject matter. See *Garrison* v. *Louisiana*, 379 U.S. 64, 67 et seq. (1964). See also *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 345-352 (1974), dealing with defamation of private persons, and *Stone* v. *Essex County Newspapaers, Inc.*, 367 Mass. 849, 859 (1975). Mihalik was an elected public official.

Before there can be defamation of a public officer there must be a false statement of fact. See *Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers* v. *Austin*, 418 U.S. 264, 283-284 (1974),[2] where it was said (at 283), "The *sine qua non* of recovery for defamation in a labor dispute . . . is the existence of falsehood." In *Garrison* v. *Louisiana*, 379 U.S. at 74, the *New York Times* case is relied on to the same effect. See *Cox Bdcst. Corp.* v. *Cohn*, 420 U.S. 469, 490 (1975); Restatement (Second) of Torts § 581A, *supra*.

The Massachusetts courts, in applying the principles of the *New York Times* case, have referred in strong general terms to the requirement that an allegedly defamatory statement be shown to be false. See, e.g., *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 230 (1979), cert. denied, 446 U.S. 935 (1980), where there was quoted Judge Lumbard's statement, "An assertion that cannot be proved false cannot be held libelous." See *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), cert. denied sub nom. *Hotchner* v. *Doubleday & Co.*, 434 U.S. 834 (1977). In *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 344 (1980), it was said of unduly sharp comments of a critic of a television sports reporter, "So long as he [the critic] excludes false statements of fact from his arsenal, the Constitution will shield him." Each of these two decisions dealt with statements ultimately treated as essentially of opinion. Thus, the significance of proof of the falsity of allegedly defamatory matters of fact may not have been directly involved. The decisions indicate generally, however, that the current Massachusetts rule relating to recovery for defamation by a public official requires a showing that the statement (about which complaint is made) is false. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. at 858, *supra*. See also the careful opinion of Maz-

---

[2] This case dealing with a "forbidden intrusion on the field of free expression," protected under the Federal labor laws, was considered on essentially the same basis as if it had been "entitled to First Amendment protection" (at 282).

zone, J., in *McIntire* v. *Westinghouse Bdcst. Co.*, 479 F.Supp. 808, 811 (D. Mass. 1979).

The *New York Times* case, 376 U.S. at 279-280, prevents a public official from recovering damages even for false statements relating to his official conduct "unless he proves that the statement was made with 'actual malice' — that is with *knowledge* that it was false or with *reckless disregard* of whether it was false or not" (emphasis supplied). It would be incongruous to permit a public official to recover where statements (in some degree relevant to his official conduct) were true as far as they went. The purposes (of not stifling discussion protected under the First Amendment) of the *New York Times* rule would not be served by permitting recovery for the statements here in issue. We think that their falsity (as that term is used in the recent cases following the *New York Times* rule) has not been established merely because in the aggregate they have an insinuating overtone.

Closely related to the ground for not permitting recovery just discussed, is a further basis for our decision. In the present state of the decisions, despite the special findings of the jury, the aggregate implications of the "clues" to the riddle seem to us to be too vague and uncertain, and too fragile in impact, to be the basis of a libel action by a public official, particularly when each clue viewed alone is consistent with the truth. In the *National Assn. of Govt. Employees* case, 379 Mass. at 229, it was said of the label "communism" that, if the word carried some further meaning or overtone than "mere pejorative rhetoric, abusive of the plaintiff" in that case, "it was [still] too vague to be cognizable as the subject of a defamation action." Compare *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 344 (1980). The clues, even though not expressed as statements of opinion, are comments with a somewhat similar purpose, made in the general context of a labor con-

troversy between HTA and the school committee. The jury would have been warranted in concluding, as they may have done, that the riddle was a shabby and discreditable performance by a schoolteacher, who in decency should have avoided (on the facts relied on by him) any possible suggestion that Mihalik had abused his office. Nevertheless, we think that even the aggregate effect of the clues (viewed as in some respects expression of opinion) does not permit recovery for defamation within the recent decisions.

In *Tropeano* v. *Atlantic Monthly Co.*, *supra* at 751, there is some indication that a false defamatory insinuation or innuendo may perhaps continue to give basis for a recovery. That case, however, did not involve a plaintiff who was a public official. Because no innuendo was pleaded, the point was not discussed to any significant extent. Compare *Memphis Publishing Co.* v. *Nichols*, 569 S.W.2d 412, 419-420 (Tenn. 1978), where the court was of the opinion that a statement about a person, neither a public official nor a public figure, made up of a combination of facts which "were substantially true" when published by the defendant, "so distorted the truth [by a strange combination of sentences] as to make the entire article false and defamatory."

Even if Mihalik could have established that, under the recent cases, the clues in the riddle were false in aggregate effect, it would still have been necessary for him, under the *New York Times* case and the cases which follow it, to prove by clear and convincing evidence that Williamson entertained "actual malice" in the sense that he had knowledge of, or recklessly disregarded, the facts underlying any insinuation of official misconduct. We need not consider that issue because of our holdings above, but merely note in the margin[3] the respects in which the clues failed to disclose

---

[3] It seems to be agreed that a Holyoke school committee member can carry on to the end of his term even if he moves out of the ward from which he was elected. Mihalik, who theretofore had rented living

facts which, if stated, would have prevented any insinuation of misconduct in office. We think that this failure of disclosure, in the context of a labor dispute and a political situation, is slim basis for a finding of actual malice under the recent cases.

Reliance by Mihalik, a public official, on G. L. c. 231, § 92, is misplaced. In view of the *New York Times* case, 376 U.S. 254, the meaning of "actual malice" as used in that section plainly cannot be continued with respect to public officers and public figures.

The motion for a directed verdict for the defendants should have been granted.

*Judgment reversed.*

*Judgment for the defendants.*

---

quarters in Ward 1, had purchased during his term a house in Ward 4 two blocks away from his former quarters. All four of Mihalik's children (at the time of the publication) were in a parochial school. Williamson was uncertain how long Mihalik had been employed by the city's department of public works. In fact it was for six years before he was made a foreman. Williamson had not investigated the matter to any significant extent. Williamson knew that any Holyoke resident could have furniture made for him in the trade school by paying for the materials and that Mihalik had provided the materials for the work done for him.