THOMAS M. GOUTHRO *vs.* EDWARD P. GILGUN & another.[1]

Middlesex. June 9, 1981. — November 12, 1981.

Present: HALE, C.J., ROSE, & PERRETTA, JJ.

*Libel and Slander.*

Statements concerning the plaintiff, a candidate for municipal office, which appeared in a political advertisement published during an apparently heated campaign, could not reasonably be understood as defamatory and were too vague to be cognizable as the subject of a defamation action against the candidate who placed the advertisement and the newspaper in which it appeared. [592-596]

CIVIL ACTION commenced in the Superior Court on December 18, 1975.

The case was tried before *Flaksman, J.,* a District Court judge sitting under statutory authority.

*William H. Shaughnessy* for the plaintiff.

*Philip M. Cronin (Peter J. McCue* with him) for Woburn Daily Times, Inc.

*James P. Whitters, III (Brian A. O'Connell* with him) for Edward P. Gilgun.

ROSE, J. The plaintiff appeals from a judgment of the Superior Court granting the defendants' motions for judgment notwithstanding the jury's verdicts in an action in tort for libel. We affirm.

Gouthro and the defendant Gilgun were incumbent candidates for alderman and mayor, respectively, when Gilgun placed a paid political advertisement in the Woburn Daily Times. Pertinent portions of the advertisement are set forth in the margin.[2] The evidence showed that both Gilgun

---

[1] Woburn Daily Times, Inc.

[2] "To the Taxpayers of Woburn: It Appears That The Campaign Is Now On! I want to thank Alderman Hassett, the candidate for Mayor,

and the Woburn Daily Times knew that Gouthro had been paid as a reserve police officer and had received a reduction on the assessment of his home during the previous mayoral administration. Both defendants had checked the figures used in the advertisement; as a result of Gilgun's verification with appropriate city officials, one of the figures was changed from $15,000 to $14,120. Gouthro contends that the advertisement was defamatory in that it injured his reputation in the community and imputed criminal conduct. He argues that the evidence at trial, when construed most favorably to the plaintiff, was sufficient to sustain the jury's verdicts against both defendants. See *Petrangelo v. Pollard*, 356 Mass. 696, 697 (1970); *Alholm v. Wareham*, 371 Mass. 621, 627 (1976); *D'Annolfo v. Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978).

Under the rule of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny, an utterance about the conduct of a public official must be false to be defamatory. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). "[T]he most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth." *Old Dominion Branch No. 496, National Assn. of Letter Carriers v. Austin*, 418 U.S. 264, 284, quoting from *Linn v. United Plant Guard Wkrs. of America Local 114*, 383 U.S. 53, 63 (1966). "So long as [a critic] excludes false statements of fact from his

Alderman Gouthro, Alderman Peterson, Alderman O'Rourke and Alderman Finnerty for the greatest endorsement any Mayor in any part of the country could ever hope to receive before election time. . . .

"Now let me tell you a little about Alderman Gouthro, the self-styled 'honest man'. While he vehemently denies it, Mr. Gouthro was 'in' under the former administration and picked up $14,120.00 of taxpayers' money. I would like to have him tell the taxpayers what he did for that kind of money. To further prove my point that Mr. Gouthro was part and parcel of the previous administration, in the year 1971, in the closing days of that administration, he received an abatement of over $1,400 on his assessment. And while Mr. Gouthro was grabbing this abatement on his home, members of the former Board of Assessors were increasing the assessments of the homeowners in his ward. WHERE WAS HIS LOUD VOICE THEN WHEN THE TAXPAYERS OF WARD I NEEDED SOMEBODY TO DEFEND THEM? He was too busy taking care of himself."

arsenal, the Constitution will shield him." *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 344 (1980).[3] It was stipulated at trial that Gouthro was a public official at the time the advertisement appeared, and he acknowledges that it was his burden to show that the defendants acted with actual malice as defined in *New York Times Co.* v. *Sullivan, supra* at 279-280, and that the standard of proof was clear and convincing evidence.[4] *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 870-871 (1975). *Callahan* v. *Westinghouse Bdcst. Co.*, 372 Mass. 582, 587-588 (1977).

The advertisement contained assertions that Gouthro had "picked up" $14,120 of taxpayers' money and had received an "abatement" on his property assessment. Gouthro himself testified that he had received over $14,120 in wages during the previous administration as a part-time reserve police officer, and that his assessment had been reduced by $1,400. There was evidence that Gouthro had, at least on occasion, in connection with his campaign and in letters to the Woburn Daily Times, characterized himself as "an honest man." Although the truth of these factual assertions was not in controversy, the jury specifically found that the statements in the advertisement as a whole were not substantially true. Any falsity, then, would have had to emerge from the context of the several assertions in the aggregate.

---

[3] The *Myers* court treated the complained-of statements as an expression of opinion. For a review of Massachusetts decisions applying the *New York Times* rule, see *Mihalik* v. *Duprey*, 11 Mass. App. Ct. 602, 604-606 (1981), which we discuss later in this opinion. See also Hallisey & Ferber, Recent Developments in the Law of Defamation, 63 Mass. L. Rev. 241 (1978).

[4] Gouthro urges us to consider expressed ill will as an element of actual malice. It is clear from cases following the *New York Times* decision, however, that irrespective of any animus on the part of the publisher, the alternative bases for recovery by a public official for a defamatory falsehood are knowledge of its falsity or reckless disregard of whether it is false or not. *New York Times Co.* v. *Sullivan, supra* at 279-280. *Beckley Newspapers Corp.* v. *Hanks*, 389 U.S. 81, 82 (1967). *Greenbelt Coop. Publishing Assn.* v. *Bresler*, 398 U.S. 6, 10 (1970). *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29, 52 n.18 (1971). *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 232-233 (1979), cert. denied, 446 U.S. 935 (1980).

We recently held, in a similar circumstance, that a series of individually true statements about a public official did not establish the falsity required by Massachusetts decisions following the *New York Times* rule "merely because in the aggregate they have an insinuating overtone." *Mihalik* v. *Duprey,* 11 Mass. App. Ct. 602, 606 (1981). In that case a teachers association newsletter had published statements about a school committee member during a dispute between the association and the committee. One of the statements, that the committee member was having the trade school make furniture for his home, was published with one defendant's knowledge that any city resident could do this by paying for the materials, and that the plaintiff had in fact provided the materials. We held that the statements, "even though not expressed as statements of opinion, [were] comments with a somewhat similar purpose, made in the general context of a labor controversy . . . . The jury would have been warranted in concluding, as they may have done, that the [publication] was a shabby and discreditable per formance . . . . Nevertheless, we think that even the aggregate effect of the [individual statements] (viewed as in some respects expression of opinion) does not permit recovery for defamation within the recent decisions." *Id.* at 606-607. As we view Gilgun's statements (that Gouthro "was 'in'" under the previous administration, "picked up" taxpayers' money, "grabbed" an abatement, and "I would like to have him tell the taxpayers what he did for that kind of money"), made with Gilgun's knowledge that Gouthro had been paid as a reserve police officer, they exhibit the same kind of purpose, are susceptible of more than one interpretation, and are "too vague to be cognizable as the subject of a defamation action." *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.,* 379 Mass. 220, 229 (1979), cert. denied 446 U.S. 935 (1980), quoted in *Mihalik* v. *Duprey, supra* at 606.

Particularly as Gilgun's statements were clearly identified as a political advertisement during an apparently heated campaign, they must be considered in light of the hyperbole

and rhetoric which normally attend the clamor for the voter's attention. *New York Times Co.* v. *Sullivan, supra* at 273 n.14, 281. *Greenbelt Coop. Publishing Assn.* v. *Bresler,* 398 U.S. 6, 13-14 (1970). *Old Dominion Branch No. 496, National Assn. of Letter Carriers* v. *Austin, supra* at 284-285. *Aldrich* v. *Boyle,* 328 Mass. 30, 32 (1951). *Adams* v. *Clapp,* 346 Mass. 245, 249 (1963). *Borski* v. *Kochanowski,* 3 Mass. App. Ct. 269, 272, 274 (1975). *Fabrizio* v. *Quincy,* 9 Mass. App. Ct. 733, 736 (1980). In *Borski* v. *Kochanowski, supra,* we declined to find defamatory statements alleging "half-truths," "innuendoes," and "undue publicity" on the part of a candidate for public office, reasoning that a "close analysis is hardly a realistic indication of how this publication would be read — labeled as it is, a 'Political Advertisement' . . . ." *Id.* at 271. Viewed in this context, we do not think Gilgun's statements could reasonably be understood to be defamatory. To hold otherwise would be inconsistent with "assur[ing] the vigorous debate on the public issues that the First Amendment was designed to protect" (*Hutchinson* v. *Proxmire,* 443 U.S. 111, 134 [1979]), and "the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co.* v. *Sullivan, supra* at 270.

We find no merit in the plaintiff's contention that the plain meaning of Gilgun's statements was that Gouthro stole or otherwise appropriated public funds. Such an inference is not compelled from the words themselves.[5] Even if specific allegations of criminal conduct had been manifest,

---

[5] Gouthro also suggests on appeal that the advertisement implied criminal conduct by linking Gouthro with the discredited administration of the previous mayor, who had been convicted of three counts of conspiracy to violate G. L. c. 30, § 39M (manner of awarding contracts for construction and materials). The convictions or any reference to them were not, however, introduced in evidence and therefore this question is not properly before us.

as in *Ocala Star-Banner Co.* v. *Damron*, 401 U.S. 295 (1971) (false publication that a candidate had been charged with perjury in Federal court), and *Monitor Patriot Co.* v. *Roy*, 401 U.S. 265 (1971) (characterization of a candidate as "a former small-time bootlegger"), the *New York Times* test of actual malice (knowledge of falsity or reckless disregard of truth or falsity) would be applicable. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. at 863. Although we need not reach the question of actual malice, we note with approval that the trial judge, in the memorandum of his decision to grant defendants' motions for judgment notwithstanding the verdicts, ruled on the basis of the evidence that the jury's finding of actual malice was not warranted. *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. at 232-233.

In view of our holding that the statements made by Gilgun and published by the Woburn Daily Times were not defamatory falsehoods, it is not necessary for us to decide whether evidence of a statement allegedly made by the publisher of the Daily Times to the plaintiff was properly excluded.

> *Judgments for the defendants*
> *affirmed.*