A.J. Faigin v. Kelly                    CV-95-317-SD   03/12/98
**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


A.J. Faigin

      v.                              Civil No. 95-317-SD

James E. Kelly


                            **O R D E R**


     In this diversity action, plaintiff Faigin, a sports agent,

alleges that he was defamed by an autobiography written by Jim

Kelly, a former client of Faigin.  Presently before the court is

plaintiff's motion for reconsideration, and a host of motions in

limine filed by both parties.



                           Discussion

I.  Plaintiff's Motion for Reconsideration of Ruling on Limited
    Purpose Public Figure Issue

     Faigin seeks reconsideration[1] of the portion of this court's

October 1, 1997 order in which the court held that Faigin was a

limited purpose public figure.  Faigin argues that under New

Hampshire law, which applies by stipulation of the parties, the

question whether a defamed plaintiff is a public figure is for

the jury not the judge.  Nash v. Keene Publishing Corp., 127 N.H.

───────────────────────

     [1]The court has fully considered Faigin's reply brief on his
motion to reconsider.

214, 222, 498 A.2d 348, 353 (1985). Faigin concludes this court should not have decided the public figure issue but should have left that issue for the jury.

However, Faigin's argument mistakenly assumes that state law controls whether the public figure issue is a question for the jury or the judge. The First Circuit in Kassell v. Gannett Co., 15 Med. L. Rptr. 1205, 1206 (1st. Cir. 1988), held that "in a federal court diversity action, federal law controls the decision whether an issue goes to the jury or to the judge." The court further held that "[u]nder federal law, the public official and public figure questions are ones for the court." Id. Under this federal rule, which displaces the conflicting New Hampshire rule that the public figure issue is for the jury, it was entirely proper for this court to decide as a matter of law that Faigin was a public figure.

The motion to reconsider is thus denied.

II. Plaintiff's Motion in Limine to Preclude Opinion Defense

Faigin seeks to preclude Kelly from raising a defense that the allegedly defamatory passages in the autobiography merely express Kelly's subjective opinion of Faigin, which is constitutionally protected speech. Faigin claims that this court's October 1, 1997, order found that as a matter of law

2

Kelly's autobiography contains defamatory statements of fact about Faigin.  But, Faigin has misinterpreted the October 1, 1997 order, which merely found that a reasonable person could conclude that Kelly's autobiography contains defamatory statements of facts about Faigin.  The court did not find that a reasonable person must draw such conclusion.  Rather, it is ultimately for the jury to determine whether the passages from Kelly's autobiography are to be interpreted as actionable statements of fact or constitutionally protected statements of opinion.  White v. Fraternal Order of Police, 909 F.2d 512, 518 (D.C. Cir. 1990) ("If, at the summary judgement stage, the court determines that the publication is capable of bearing a defamatory meaning, a jury must determine whether such meaning was attributed in fact.").

The motion is thus denied.


III. Plaintiff's Motion in Limine to Bar Any References to Hunter Kelly's Illness

Faigin argues that under Fed. R. Evid. 403, Kelly must be precluded from referring to his son's illness during the trial, as such reference would have no probative value and would work unfair prejudice on Faigin by evoking jury sympathy for Kelly.  However, should Kelly have to be absent from trial to attend to his son Hunter, the court must explain Kelly's absence to the

3

jury.  Should such an eventuality materialize, the court will at that time discuss with counsel from both sides the extent to which Hunter's illness will be disclosed to the jury as an explanation for Kelly's absence.[2]

The motion is thus denied.


IV.  Plaintiff's Motion in Limine to Exclude the Testimony of Andrew Miller

Faigin seeks to exclude the testimony of Andrew Miller, Kelly's accounting expert, under  Fed. R. Evid. 702, which consists of three related requirements.  "[First], a proposed expert witness must be qualified to testify as an expert by 'knowledge, skill, experience, training or education'. . . [second] the expert's testimony must concern 'scientific, technical, or other specialized knowledge' . . . [third] the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995) (quoting, Fed. R. Evid. 702)  "Determinations of whether a witness is sufficiently qualified to testify as an expert on a given subject and whether such expert testimony would be helpful to the trier of fact are committed to the sound discretion of the trial court." Pacamor

---

[2]The court has fully considered Faigin's reply memo.

4

<u>Bearings, Inc. v. Minebea Co., LTD.</u>, 918 F. Supp. 491, 506 (D.N.H. 1996) (internal quotations ommited).

The court concludes that Miller's testimony should not be excluded as the three requirements of Rule 702 have been met. Kelly intends to elicit testimony from Miller concerning the nature and appropriateness of the financial investments made by Faigin on behalf of Kelly.  First, Faigin does not dispute Miller's qualifications to testify on this subject matter. Second, since the investments at issue are complex financial transactions, Miller's testimony concerns 'scientific, technical, or other specialized knowledge' beyond the ordinary knowledge possessed by the lay person.  Third, Miller's testimony about the appropriateness of the investments Faigin made for Kelly will assist the jury in determining whether Faigin engaged in untrustworthy and unlawful conduct in handling Kelly's business affairs, which is one of the paramount issues in the case.

The motion is thus denied.

V.   Defendant's Motion in Limine to Exclude Expert Testimony of
     A.J. "Jack" Mills

     Faigin intends to elicit testimony from expert witness Mills concerning the economic loss suffered by Faigin as a result of the defamation in Kelly's autobiography.  Basically, Kelly objects to the proposed bases for Mill's opinion about the loss suffered by Faigin.  Mills intends to base his opinion on the projected earnings of an average agent with decent experience and no reputational impediments.  Kelly objects on grounds that Faigin's success as a sports agent was, during some periods, less than that of an average agent.  Further, Kelly contends that Faigin had more reputational impediments than the average agent. The court agrees with Kelly that the further the gulf between Faigin and the "average agent," the less persuasive Mill's testimony.  However, Kelly has not demonstrated that the gulf is so obviously immense that Mill's expert testimony should be excluded.  Rather, any points of divergence and shortcomings of Mill's foundational assumptions can be explored on cross examination.

     The motion is thus denied.

VI.  Defendant's Motion in Limine to Preclude Introduction of Evidence of Pre-publication Damages

Kelly objects to Faigin introducing evidence of damage to his business that occurred before the publication of the allegedly defamatory autobiography.  It is axiomatic that a defamation plaintiff may only recover damages proximately caused by the defamatory publication.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 349-50 (1974), cert. denied, 459 U.S. 1226 (1983).  Despite this rule, Faigin intends to introduce evidence that Pat Terrell canceled his agency contract with Faigin in February 1990 upon learning of Kelly's lawsuit against Faigin in Texas.  However, Terrell's decision to cancel his contract with Faigin occurred two years before the 1992 publication of the allegedly defamatory autobiography.  Thus, the loss of Terrell's patronage could not have been caused by the defamation, and is entirely irrelevant to the case at hand.

Faigin seeks to avoid this rather obvious conclusion by arguing that loss of Terrell's patronage, while clearly not caused by the defamation, was nonetheless caused by Kelly's "tortious act of filing a frivolous lawsuit against [Faigin]."  Plaintiff's memorandum attached to motion, p. 5.  Even if Faigin could make out a viable claim against Kelly for malicious prosecution, Faigin is now suing Kelly for defamation, not malicious prosecution.  Simply because a plaintiff proves that a

7

defendant committed a tort does not entitle the plaintiff to damages caused by all the torts defendant may have committed against plaintiff in the past. Those damages may only be recovered by separate claim for the torts alleged to cause such damages.

This is not to say that Faigin is entirely precluded from introducing evidence concerning pre-publication events. Such evidence may be relevant to other issues in the case besides damages, for instance Kelly's state of mind with respect to the defamatory publication. However, lose of Terrell's patronage has no relevance independent of the damage issues, and is inadmissible.

The motion is thus granted.

VII. <u>Defendant's Motion in Limine to Preclude Evidence Regarding Damages Arising Out of Defamation by Implication</u>

Kelly urges this court to adopt a rule that there can be no liability for a defamatory inference drawn from a facially accurate report about a public figure. In the October 1, 1997, Order, this court found that portions of Kelly's autobiography were defamatory even though some of the relevant passages were facially accurate factual reports about Faigin because those true facts nonetheless arguably implied an underlying defamatory meaning that was untrue. More specifically, the court found that

8

the statement "I fired . . . Faigin and . . . filed a major lawsuit against [him]," while facially accurate, nonetheless implied Faigin was guilty of misdeeds, which is arguably untrue. Even though the law is settled that a "defamatory inference may be derived from a factually accurate news report," White, supra, 909 F.2d at 518, Kelly argues that there should be an exception for public figures, such as Faigin, due to the the First Amendment interests at stake.

Some courts have created a per se exception against defamation by implication from true facts about public figures. In Schaefer v. Lynch, 406 So.2d 185, 188 (La. 1981), the court said: "truthful statements which carry a defamatory implication can be actionable. However, that is only true in the case of private citizens and private affairs. . . . Even though a false implication may be drawn by the public, there is no redress for its servant. Where public officers and public affairs are concerned, there can be no libel by innuendo." To justify such a rule, courts have reasoned that New York Times Co. v. Sullivan, 376 U.S. 254 (1964), requires a showing that the defendant made the defamatory statement with "'actual malice' that is with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, supra, 376 U.S. at 279-280. Some courts have reasoned that Times malice is impossible

9

to establish when the defamation is found by implication from a facially accurate report.  Mihalik v. Duprey, 11 Mass. App. Ct. 602, 605, 417 N.E.2d 1238, 1240 (1981) ("It would be incongruous [under the Times malice standard] to permit a public official to recover where statements . . . were true as far as they went . . . .  We think that their falsity . . . has not been established merely because in the aggregate they have an insinuating overtone."); Cibenko v. Worth Publishers, Inc., 510 F. Supp. 761, 765 (D.N.J. 1981); Strada v. Connecticut Newspapers, 193 Conn. 313, 322-24, 477 A.2d 1005, 1010-11 (1984) ("Just as the goal of a free and active press protects false statements of fact regarding public figures published without malice, so too must the law protect truthful facts that may give rise to false innuendo or inference.").

This court respectfully disagrees with the reasoning of these courts.  Admittedly, Times malice with respect to the explicit statements of a facially accurate report may be impossible to establish.  Nonetheless, in an action for defamation by implication, the focus is not on the explicit statements but rather on the implicit underlying defamatory inference, which may be a malicious calculated falsehood, in which case the Times malice standard would be satisfied.  For instance, in White, supra, 909 F.2d at 519, the defendant

10

accurately reported that a certain public official tested positive on a drug test. The clear, but unstated implication was that the official used illegal drugs, when, in fact, the test was a false positive. If the defendant knew the official never used illegal drugs, the report, while facially accurate, maliciously implied a calculated falsehood. So, while *Time malice* could not be established for the facially accurate statement that the official tested positive for drugs, <u>Times</u> malice could be found for the underlying defamatory inference that the official used illegal drugs.

An argument in favor of a per se rule could be made that, given the greater First Amendment interests at stake in true facts about public figure, there should be no recovery even if the public figure can prove <u>Times</u> malice with respect to an underlying defamatory inference. <u>See</u> <u>Strada</u>, <u>supra</u>, 477 A.2d at 322 ("[F]irst amendment considerations dictate that an article concerning a public figure composed of true or substantially true statements is not defamatory regardless of the tone or innuendo evident."). Generally, facially accurate reports about public figures are closer to the core of the First Amendment than other categories of potentially defamatory speech. <u>See</u>, <u>New York Times</u>, <u>supra</u>, 376 U.S. at 281 ("It is of the utmost consequence that the people should discuss the character and qualifications

11

of candidates for their suffrages.  The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of [candidates] whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great.").  This counsels greater First Amendment protections for defamation by implication from true facts about a public figure than for that arising from, for example, an opinion about the public figure.

However, the per se rule against defamation by implication from true facts about public figures values the First Amendment interests to the exclusion of the state's interest in protecting reputation, which may be equally as tarnished by the underlying defamatory inference of a facially accurate report as by an outright lie.  For instance, the facially true report in <u>White</u>, <u>supra,</u> 909 F.2d at 519, that the public official tested positive for drugs harmed that official's reputation as if the defendant had outright falsely accused the official of using illegal drugs. The admittedly stronger First Amendment interests at stake with facially accurate reports of public figures must be balanced against the state's interest in protective reputation, which remains equally as strong whether the defamation is explicit or

12

by implication. A per se rule fails to achieve an appropriate balance.

Even though a per se rule is too strong, the court finds that application of standard defamation rules to defamation by implication from true facts about a public figure overvalues the state's interest and undervalues the strong First Amendment interests at stake. Under standard defamation rules, the published language is interpreted under an objective theory in which the publication is given the meaning that a reasonable person would attribute to the language used in the publication. Id. ("When one uses language, one is held to the construction placed on it by those who hear or read, if that construction is a reasonable one."). Under this rule of interpretation, a publisher may be held liable for the defamatory inference that a reasonable person would attribute to the true facts reported by the publisher, even though the publisher did not intend to convey that defamatory inference. Id. ("It is no defense that the defendant did not actually intend to convey the defamatory meaning, so long as the defamatory interpretation is a reasonable one."). This chills expression because a publisher must be vigilant of every possible defamatory implication that may reasonably arise from a report of true facts. Given the heightened First Amendment interests at stake in true facts about

13

public figures, this chilling effect is inappropriate.

Accordingly, this court believes there should be an exception to standard rules of defamation interpretation for defamation by implication from true facts about public figures. This court believes the allegedly defamatory language should be interpreted according to a subjective standard, and the plaintiff must prove that the publisher intended the defamatory meaning that it said to arise by implication from the true facts reported. Such a subjective rule of interpretation strikes the most appropriate balance between the heightened First Amendment interests at stake and the state's interest in protecting reputation. As the Fourth Circuit said: "[B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." Chapin v. Knight-Ridder Inc., 993 F.2d 1087, 1093 (4th Cir. 1993).

The motion is thus denied, but the court will instruct the jury that the defamation should be interpreted under a subjective standard.

14

VIII.  <u>Plaintiff's Motion in Limine to Prohibit Evidence on a</u>
       <u>Defense Theory of Vicarious Liability</u>

The court agrees with Faigin that, as a general matter, there is a difference between, on the one hand, alleging that a person is the direct agent of wrongdoing and, on the other hand, alleging that the person is guilty by association with wrongdoers.  Therefore, a defamatory accusation that a plaintiff is the direct agent of wrongdoing is not rendered true by proof that the plaintiff is guilty by association with wrongdoers.  In the October 1, 1997 order, this court interpreted the defamatory passages from Kelly's autobiography to imply that Faigin was the direct agent of wrong against Kelly.  If this court's interpretation were controlling, the court would agree with Faigin that proof of Faigin's guilt by association with Lustig would be irrelevant.  However, this court has ruled that it is ultimately for the jury to determine what, if any, defamatory meaning was intended by Kelly.  If the jury believes that Kelly intended to accuse Faigin not of direct wrongdoing but rather of guilt by association, proof that Faigin is in fact guilty by association goes to the truth value of the defamation.

The motion is thus denied.

15

IX.    Plaintiff's Motion in Limine to Limit Defense Evidence to those Complaints About Kelly's Representation which were Actually Raised in the Texas Lawsuit.

Faigin bases this motion on the October 1, 1997 order in which the court held that the defamatory sting of Kelly's autobiography consisted of the same factual allegations and complaints about Faigin's representation of Kelly that Kelly previously raised in the Texas lawsuit. However, once again it is the jury that will ultimately determine what, if any, defamatory sting can be drawn from the autobiography. Since the jury may believe that the defamatory sting consists of complaints against Faigin that are broader and different than the specific allegations raised in the Texas lawsuit, Kelly is entitled to introduce evidence of such broader or different complaints.

The motion is thus denied.


X.     Plaintiff's Motion in Limine to Give Limited Preclusive Effect to the Rule 11 Decision against Kelly

The Rule 11 sanctions issued against Kelly by the Texas court will not be accorded preclusive effect. To establish collateral estoppel, one of the requirements is that the issue to be precluded is the same as in the first action. Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994). The issue decided in the Rule 11 order was whether Kelly knew that the allegations in the Texas lawsuit complaint against Faigin

16

were false.  The issue here is whether Kelly knew that the defamatory message in his autobiography was false.  The jury may find that the defamatory message consists of allegations that are different and broader than those in the Texas lawsuit.  Thus, a finding that Kelly knew the allegations in the Texas lawsuit were false may have no bearing on whether Kelly knew the defamation was false.

Faigin has a back-up position.  Faigin argues that even if the Rule 11 order is narrower in scope than the issues here, the Rule 11 order should be given preclusive effect over at least the narrower range of issues that were within the scope of the Rule 11 order.  However, this court finds that there is no overlap between the issues decided in the Rule 11 order and the issues in this case.  Strictly speaking, the issue here is whether there is clear and convincing evidence that Kelly knew the defamation was false.  New York Times, supra, 376 U.S. at 285.  The clear and convincing evidence burden is part of the Times malice standard and serves to hold "the line between speech unconditionally guaranteed and speech which may legitimately be regulated."  Id. (internal quotations omitted).  On the other hand, findings to support Rule 11 sanctions do not have to be supported by clear and convincing evidence.  Thus, in the context of the Rule 11 order, the Texas court's finding that Kelly knew the allegations

17

were false does not translate into a finding that there was clear and convincing evidence of Kelly's malice.

The motion is thus denied.


XI.  Motion in Limine to Preclude Evidence of the Rule 11 Opinion on Sanctions

The court will reserve ruling on this motion until the issues are better developed at trial. Kelly seeks exclusion of the Rule 11 sanctions under Rule 403, which requires a weighing of the probative and prejudicial value of evidence. At this stage of the litigation, it is difficult to gage the probative value of the Rule 11 order. The more evidence introduced at trial that the defamation was based on Kelly's complaints about Faigin that are different from the complaints Kelly raised in the Texas lawsuit, the less probative the Rule 11 order's finding that Kelly knew the complaints raised in the Texas lawsuit were false. Once the probative value of the Rule 11 order becomes better established during the course of trial, the court will apply the 403 balance test.

The motion is thus denied.


XII.  Faigin's Supplement to Motions in Limine

Faigin seeks to exclude testimony that Gary Cooper expressed concern to Faigin about the legitimacy of an investment

made by Lustig on Kelly's behalf.  First, Faigin claims Cooper's testimony is irrelevant because Kelly did not know of the conversation between Cooper and Faigin.  Thus, Cooper's testimony does not render it more likely that Kelly believed true the defamatory allegations of wrongdoing against Faigan.  However, truth is a complete defense to defamation whether or not the publisher knew the defamation was true.  Cooper's testimony is relevant to whether, in fact, Faigin committed wrongs against Kelly regardless of whether Kelly was aware that he was the victim of wrongdoing.  Second, Faigin argues that he was not informed of Cooper's proposed testimony until the eve of trial.  However, this is not a grounds for exclusion because Faigin has deposed the witness and will have an opportunity to cross-examine Cooper.  Thus, Faigin has ample opportunity to prepare for Cooper's testimony.  Third, Faigin argues that Cooper's testimony is irrelevant because it merely establishes that Lustig was guilty of wrongdoing of which Faigin was aware.  According to Faigin, this merely tends to prove his guilt by association.  However, the court disagrees with Faigin's characterization of the evidence.  If Faigin failed to inform Kelly of a known improper investment made by Faigin's partner Lustig, Faigin at least arguably breached a personal duty owed to Kelly.  Thus, Cooper's testimony tends to prove that Faigin was the direct

19

agent of wrong against Kelly. Furthermore, since this court has ruled that Kelly may introduce evidence that the defamation was intended to accuse Faigin of guilt by association, the court would not exclude Cooper's testimony even if Faigin's characterization of that testimony were accurate.[3]

The motion is thus denied.


XIII.  Plaintiff's Motion to Prohibit Allegations of Double Billing

Faigin contends that the court should preclude Kelly from introducing evidence that Faigin, or any company with which Faigin worked, engaged in "double-billing." Faigin's argument is based on the contention that the decision of the Cuyahoga County Court of Common Pleas should be given preclusive effect. See Lustig Pro Sprts, Inc. v. Kelly, No. 168339 (Court of Common Pleas, County of Cuyahoga Dec. 10, 1990). According to Faigin, "any claim for alleged 'double-billing' that Kelly raised has been merged into the Ohio judgment." Plaintiff's Memorandum in Support of Motion in Limine to Prohibit Allegations of Purported "Double-Billing", at 2. Further, Faigin argues that Kelly should be barred from mischaracterizing the Ohio decision.

First, the court notes that the doctrine of claim

---

[3]    For this same reason, the court denies Faigin's motion to exclude Ron Spring's testimony.

20

preclusion, or res judicata, of which merger is a facet, is not applicable to this case. Kelly is not attempting to assert a counter claim that should have been decided in the earlier litigation, he is merely seeking to defend the present defamation claim by establishing truth, or absence of malice. Thus, the court assumes that the plaintiff has confused the doctrine of res judicata with collateral estoppel, which precludes parties from relitigating issues that have been "actually and necessarily determined by a court of competent jurisdiction." See 18 James W. Moore et al., Moore's Federal Practice § 132.01 (3d ed. 1997).

> The distinction between the effect of a judgment as a bar to the prosecution of a second action for the same cause, and its effect as an estoppel in another suit between the same parties upon a different cause of action, has long been recognized in this jurisdiction. . . . In the former case, the judgment on the merits is an absolute bar to a subsequent action: it concludes the parties, not only as to every matter which was offered and received to sustain or to defeat the suit, but also as to any other matter which might have been offered for that purpose, but in the latter case, the judgment in the prior action operates as an estoppel only as to those matters which were then directly in issue, and either admitted by the pleadings or actually tried.

5 Richard Wiebusch, New Hampshire Practice, Civil Practice and Procedure § 1871 (1984) (quoting Ainsworth v. Claremont, 108 N.H. 55, 56, 225 A.2d 867 (1967)).

Thus, the preclusive effect of the Ohio decision is

21

limited to the issues actually decided by that court. Although the Ohio court rejected Kelly's claim that LPS overcharged him by billing 5% commission on his earning, rather than the 3% Kelly claimed he owed, the court did find that Kelly had overpaid $9,600.00 in commission on bonus money provided for by the Houston Gamblers' contract. Based upon these findings, both litigants conclude that the Ohio court decision is favorable to their case. Faigin seeks to assert that the court's statement that "there has been no showing of overpayment,[4]" means Kelly should be precluded from offering any evidence of improper billing. This position, of course, is untenable. The preclusive effect of the judgment is limited to the facts actually decided–that Kelly owed LPG 5% of his earnings. Thus, in this case the court will preclude Kelly from again arguing that he only owed LPG 3%.

Kelly, however, contends that the structuring of his Gamblers' bonus payment and the commission LPG received were major factors leading him to loose trust in his agents. To the extent that the Ohio court found that LPG billed Kelly for commission to which it was not entitled, the decision supports

_____

[4]There was clearly no overpayment in this case because, although LPG had negotiated Kelly's Bills' contract which ran through the 1990-91 football season, Kelly stopped making payments to LPG in 1988.

Kelly's contention.  Thus, Kelly is entitled to use the decision to support his defense.  Furthermore, since Kelly can defend this defamation suit either by showing that the defamatory implication was true or that he lacked malice, Kelly's understanding of the Ohio court's decision is relevant.  Kelly can argue that he believed his allegations were true because the Ohio court's deduction of $9,600.00 from the amount owed led him reasonably to believe that he had been overcharged.

In the final analysis, the parties argument over the implications of the Ohio decision seems to be an issue of semantics.  While Faigin argues that the decision supports his contention that there was no evidence of "double billing," Kelly argues that the court's deduction of the $9,600.00 from the amount owed indicates that he was indeed "double billed."  Under these circumstances, the court finds the most appropriate solution is to allow the parties to use the decision as evidence and attempt to persuade the jury that their characterization of the decision is proper.  In the end it is the jury that must decide the significance of the $9,600.00 that the Ohio court found was not owed to LPG.

The motion is granted in part in that Kelly will be precluded from arguing that he only owed LPG 3% commissions.

23

## Conclusion

For the foregoing reasons, the court has denied (1) plaintiff's motion for reconsideration (document no. 92), (2) plaintiff's motion to preclude opinion defense (document no. 58), (3) plaintiff's motion to bar reference to Hunter Kelly (document no. 64), (4) plaintiff's motion to exclude testimony of Andrew Miller (document no. 63), (5) defendant's motion to exclude testimony of A.J. Mills (document no. 68), (6) defendant's motion to preclude defamation by implication (document no. 67), (7) plaintiff's motion to prohibit vicarious liability defense (document no. 59), (8) plaintiff's motion to limit defense to complaints which were raised in the Texas lawsuit (document no. 62), (9) plaintiff's motion to give preclusive effect to the Rule 11 sanction order (document no. 61), (10) defendant's motion to preclude evidence of Rule 11 order (document no. 69), (11) plaintiff's supplementary motion to preclude testimony of Cooper (document no. 104). The court has granted (1) defendant's motion to preclude evidence of pre-publication damages (document no. 66), and (2) plaintiff's motion to prohibit allegations of double

24

billing, which is granted only in part (document no. 55.1).

**SO ORDERED.**

_____
Shane Devine
Senior Judge

March 12, 1998

cc:  Wilbur A. Glahn, Esquire
     Alan J. Mandel, Esquire
     Linda Steinman, Esquire
     Steven M. Gordon, Esquire