JAMES D. MYERS, JR. *vs.* BOSTON MAGAZINE COMPANY, INC.

Suffolk.   January 7, 1980. — April 3, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Libel and Slander.*

Taken in context, a reference to the plaintiff as "[t]he only newscaster in town who is enrolled in a course for remedial speaking" was a statement of opinion and could not reasonably be interpreted as a defamatory statement of fact.  [341]

CIVIL ACTION commenced in the Superior Court on May 23, 1977.

A motion to dismiss was heard by *Ford, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joyce Wheeler Poulin* for the plaintiff.

*Joseph D. Steinfield* for the defendant.

LIACOS, J.   The plaintiff (Myers) commenced this action on May 23, 1977, in the Superior Court in Suffolk County. His complaint alleged, inter alia, that the defendant, Boston Magazine Company, Inc., caused to be published false statements about him which injured his reputation, held him up to ridicule, and injured him in his profession. The alleged statements were that Myers was the "worst" sports announcer in Boston, that he was "enrolled in a course for remedial speaking," and that he was not "knowledgeable," "articulate" or "serious" about the business of "sports coverage."   Myers also alleged that the defendant's statements were not privileged and that the magazine's agents made the statements with actual malice.   On June 28, 1977, the defendant moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the grounds that the defendant's statements were

expressions of opinion and constituted fair comment regarding a public figure. On July 14, 1977, the judge granted the motion and entered judgment for the defendant. The plaintiff appealed. The Appeals Court reversed that judgment (the panel was divided, two to one), holding that one of the statements in question could reasonably be interpreted as a defamatory statement of fact, not a statement of opinion. *Myers* v. *Boston Magazine Co.*, 7 Mass. App. Ct. 676 (1979). We granted the defendant's petition for further appellate review. We affirm the judgment of the trial court.

According to Myers' complaint, he is a local television sports news announcer. The defendant publishes Boston Magazine, a monthly periodical, which printed in its September, 1976, issue, at page 71, the statements in question. Myers has appended to his complaint a copy of the entire page, and the majority and dissenting opinions in the Appeals Court have provided extensive excerpts and description. Therefore, we do not describe the page in its entirety. Instead, we provide an abbreviated account to put the alleged libel in context.

The page's title, in conspicuous type, is "Best & Worst: SPORTS." Dominating the center of the page are two adjacent columns, each containing four cartoons; for example, a football player about to pass a large lemon. On either side of this central double column is a narrow column of four print items. Each item bears a conspicuous title corresponding to the subject of the adjoining cartoon, and the item itself contains relatively small print. The title identifies the category of "best" and "worst" selections announced in the item. Few of the categories conceivably qualify as involving "serious" sports subjects; typical examples are "Locker" and "Sports groupie." Each print item contains a paragraph beginning "Best" and one beginning "Worst." Each paragraph states the author's choice and includes an explanation. The pervasive mood of these explanations is rough humor; they are "one-liners," and the propositions they assert are generally preposterous. For example, under

the heading "Sexy Athlete" which borders the item about Myers, the second paragraph reads "Worst: The Bruins. You'd look like a gargoyle, too, if you spent a lifetime fielding pucks with your face." It is in this context, in the upper left-hand corner of the page, that the allegedly defamatory statements appeared: "Sports announcer. *Best*: Clark Booth, Channel 5. Knowledgeable and articulate, he writes his own copy and reads it with the conviction that sports coverage is a serious business. *Worst*: Jimmy Myers, Channel 4. The only newscaster in town who is enrolled in a course for remedial speaking."

Myers' arguments focus on the allegedly false statement about "remedial speaking." He argues that the statement should be read as an assertion of fact, not opinion. Specifically, he contends that the statement is neither a protected amplification of a statement of opinion, nor an example of mere hyperbole or rhetorical excess. Myers also argues that the statement is defamatory and that the defense of fair comment is not available on a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[1] Myers does not dispute that he is a public figure, nor that the challenged language involves a matter of public concern.

Only recently, in *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.*, 379 Mass. 220, 227-228 (1979), we set out the law governing defamatory opinions: "'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of facts.' *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974) (footnote omitted). From these principles, with their constitutional roots, the American Law Institute derived § 566 of Restatement (Second) of Torts (1977): '*Expressions of Opinion.* A de-

---

[1] We do not reach either of these latter issues in this opinion. As to the status of the defense of "fair comment" under the Restatement (Second) of Torts (1977), see *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.*, 379 Mass. 220, 227 n.8 (1979).

famatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.' The matter is put thus in Comment c, second par.: 'A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.' Thus if I write, without more, that a person is an alcoholic, I may well have committed a libel prima facie; but it is otherwise if I write that I saw the person take a martini at lunch and accordingly state he is an alcoholic. See Illustrations 3 and 4 to § 566. The rule and the distinction are confirmed by the recent cases" (citations omitted).[2]

It is clear that if the statements complained of by the plaintiff must be viewed as statements of opinion rather than of fact, the defendant's motion to dismiss, based on this ground, properly was allowed. We turn first to this question. Several courts have characterized the determination whether a statement is one of fact or opinion as a question of law. E.g., *Gregory* v. *McDonnell Douglas Corp.,* 17 Cal. 3d 596, 601 (1976); *Bucher* v. *Roberts,* 179 Colo. 1, 3 (1979); *Rinaldi* v. *Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 381, cert. denied, 434 U.S. 969 (1977). The Supreme Court of California has amplified this proposition. "[T]he distinction between fact and opinion is a question of law . . . if the statement unambiguously constitutes either fact or opinion. Where, . . . however, the allegedly libelous

---

[2] As we said in *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.,* 379 Mass. 220, 228 (1979): "If there should be any doubt about the sweep of the reasoning [just set out] as applied to what may be termed private libels, there can . . . be none in cases like the present." See *Bucher* v. *Roberts,* 179 Colo. 1 (1979) (applying fact/opinion distinction in private libel).

remarks could have been understood by the average reader in either sense, the issue must be left to the jury's determination." *Good Gov't Group of Seal Beach, Inc.* v. *Superior Court,* 22 Cal. 3d 672, 682 (1978), cert. denied, 441 U.S. 961 (1979).[3] This approach is analogous to the allocation between judge and jury on the issue whether a statement is defamatory. See W. Prosser, Torts 747-748 (4th ed. 1971). The plaintiff argues that, on the rule 12 (b) (6) motion in this case, the test is whether the challenged language can reasonably be read as stating a fact. This is similarly analogous to the traditional test for a rule 12 (b) (6) motion on the ground that a statement is not defamatory. See, e.g., *Smith* v. *Suburban Restaurants, Inc.,* 374 Mass. 528, 529-530 (1978); *Borski* v. *Kochanowski,* 3 Mass. App. Ct. 269, 271 (1975).[4] The defendant does not dispute the plaintiff's argument and the test suggested by the plaintiff is consistent with the California rule. It is also consistent with the approach we took in *Central Broadcasting, supra,* and hence we apply it here.[5]

---

[3] The characterization of the fact/opinion distinction as a question of law squares with courts' approach to the Opinion Rule in the law of evidence. The decision to exclude a witness's statement of opinion is a question for the judge. See, e.g., *Kane* v. *Fields Corner Grille, Inc.,* 341 Mass. 640, 647 (1961); *McGrath* v. *Fash,* 244 Mass. 327 (1923). However, "[t]he purpose of the Opinion Rule is to reserve to the jury the function of making inferences whenever that is feasible." W.B. Leach & P.J. Liacos, Massachusetts Evidence 86 (4th ed. 1967). Presenting the jury with the question whether to admit the evidence as fact would defeat that purpose. In contrast, the purpose of the First Amendment fact/opinion distinction is to preserve free commerce in ideas and to prevent media self-censorship. See generally *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 267-283 (1964). There is no inherent illogic in permitting the jury to interpret an ambiguous statement. The standard the jury should apply must represent an accommodation of competing constitutional interests. Cf. *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 342 (1974) (requiring clear and convincing proof of actual malice). We need not set that standard today.

[4] *Smith* is a summary judgment case under Mass. R. Civ. P. 56, 365 Mass. 824 (1974); *Borski* treats the matter as a rule 12 (b) (6) proceeding. We perceive no substantive difference whether the issue arises under rule 12 (b) (6) or rule 56.

[5] In *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.,* 379 Mass. 220 (1979), we upheld the allowance of a motion for summary

We conclude that a reader would not reasonably understand the statement that Myers "is enrolled in a course for remedial speaking" to be an assertion of fact. Taken in context, it can reasonably be understood to suggest that Myers should have been so enrolled. Even the latter statement may be hyperbolic. The author may have meant only that Myers' sports news reading needed improvement. On either of these interpretations, the challenged publication states a critical judgment, an opinion. As is essential in aesthetic criticism — even in criticism so casual, perfunctory and overdrawn as this — the object of the judgment is available to the critic's audience. Here, Myers' performances were often on view, and they furnished the assumed facts from which the critic fashioned his barb.

The question remaining is whether any other interpretation is reasonable. "The primary question for determination . . . is whether 'the words themselves, taken in their natural sense, and without a forced or strained construction'" can be understood as stating a fact. *Peck* v. *Wakefield Item Co.*, 280 Mass. 451, 453 (1932), quoting from *Thomas* v. *Blasdale*, 147 Mass. 438, 439 (1888). Neither Myers nor our case law would have us interpret the fragment, "The only newscaster in town who is enrolled in a course for remedial speaking," apart from its context. See *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp., supra* at 228-230. Such a view would be inconsistent with Restatement (Second) of Torts § 563, Comment d (1977). See also W. Prosser, *supra* at 748. As one court recently said, "The test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words

judgment made on alternative grounds: the allegedly libelous statement was an opinion based on disclosed facts; the meaning of the opinion was too amorphous to be actionable; the plaintiff had not shown sufficiently clear and convincing evidence from which a jury could find actual malice.

used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Information Control Corp.* v. *Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir. 1980).

The reader's first glance at page 71 cannot avoid the title. It declares that the page belongs to the popular genre of articles which journalists select the "best" and "worst" of whatever categories strike their fancy. Nor can the eye avoid the subtitles and the cartoons, both of which suggest that the expressed opinions will have an especially humorous inclination and fanciful tone. As the dissenting Justice remarked, "The very subjects [of the awards] bespeak levity and tongue in cheek." 7 Mass. App. Ct. at 682. The "Best and Worst" format invites the reader to test his opinions against the author's. Some of the recipients of the "awards" may have been so interested as to take them seriously, but the reasonable reader could only approach the article with a measure of scepticism and an expectation of amusement. Neither of these predispositions is conducive to misunderstanding a joke as a statement of fact. Furthermore, the author of the page makes no pretense of presenting reasoned argument or accumulation of data. The "explanations" for the choices are most often jokes that may be lame or sophomoric or funny, but are not attempts to persuade. Every explanation of the "worst" selections involves a joke. The challenged assertion about Myers may be less absurd than some other statements in the article; also, as Myers points out, the item for best "Local Sports Book,"[6] like best "Sports Announcer," may not be intended as humor. But these few distractions would not befuddle any reasonable

---

[6] That item reads: "*Best: El Tiante,* by Luis Tiant and Joe Fitzgerald (Doubleday & Co.). A probing and well-written portrait which humanizes the Red Sox myth."

reader.  Taken in context, the statement about Myers is incontrovertibly opinion.

Myers proposes to distinguish cases involving protected hyperbole or rhetorical excess.  See, e.g., *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin*, 418 U.S. 264, 268 (1974) ("a traitor to his God, his country, his family and his class"); *Greenbelt Coop. Publishing Ass'n* v. *Bresler*, 398 U.S. 6 (1970) ("blackmail"); *Buckley* v. *Littell*, 539 F.2d 882 (2d Cir. 1976), cert. denied, 429 U.S. 1062 (1977) ("fascist"); *Curtis Publishing Co.* v. *Birdsong*, 360 F.2d 344 (5th Cir. 1966) ("bastard").[7]  In cases of this type, the plaintiff argues, it would have been clearly unreasonable to construe the challenged publication as a statement of fact: the words at issue were cliches with popular figurative meanings; and the language appeared in a unified context that made clear the words' figurative import.  However, according to the plaintiff, the assertion about him can reasonably be read as fact; its words lack a popular figurative meaning; the statement does not arise in the context of public debate, and the disjointed format encourages piecemeal reading, not an appreciation of the context as a whole.

The plaintiff's argument finds some superficial support in the cases.  The words in the cases, if not cliches, do have colloquial, figurative meanings.  In loose usage, epithets such as "blackmailer," "traitor," or "fascist" tend to create a murky atmosphere of opprobrium and unexamined opinion.  Thus, the cases held that "to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies . . . is not to falsify facts." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin, supra* at 284, quoting from *Cafeteria Employees Local 302* v. *Angelos*, 320 U.S. 293, 295 (1943).

---

[7] For two recent cases of a similar character, see *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.* 379 Mass. 220 (1979) ("communist"), and *Loeb* v. *Globe Newspaper Co.*, 489 F. Supp. 481, 486 (D. Mass. 1980) ("runs a newspaper by paranoids for paranoids").

But the plaintiff understands this language too narrowly. In the case before us, it is true that the challenged language has no familiar figurative sense. Nor is its meaning too amorphous to permit a libel action. See *National Ass'n of Gov't Employees* v. *Cental Broadcasting Corp.*, *supra* at 229. Removed from context, the statement passes for a factual proposition whose sense is clear. Only in context does it assume ironic proportion, with an "is" substituted for an "ought." But the mere presence of a different kind of figurative language from that found in other cases does not free this case from the claims of the distinction between fact and opinion. If the device here is lacking in art, it is no less figurative than a vague epithet or a soaring metaphor.[8] And it deserves the same protection under the First Amendment.

The magazine's statement does not arise from "conventional give-and-take in our economic and political controversies," but it does partake of an ancient, lively tradition of criticizing, even lampooning, performers. To sharpen the bite of his rapier, a critic may resort to caricature or rhetorical license. So long as he excludes false statements of fact from his arsenal, the Constitution will shield him. Though the plaintiff may be correct that the format of the article encourages disjointed reading, conspicuous and unavoidable features of the page announce its humorous, opinionated intentions. Moreover, the brevity of the individual items only underscores that they are written, not for serious effect, but to sting and be quickly forgotten. For a plaintiff who is the victim of ridicule, the forgetting may not be easy. But the

---

[8] In so far as it appears on its face to be a statement of fact, the ironic statement involved here resembles an assertion in a fictional narrative. The First Amendment protects fictional ideas no less than others. In that context, according to one court, "[t]he test is whether a reasonable person, reading the book, would understand that the fictional character therein pictured was, in actual fact, the plaintiff acting as described." *Bindrim* v. *Mitchell*, 92 Cal. App. 3d 61, 78, cert. denied, 444 U.S. 984 (1979). On the other hand, the Boston Magazine statement differs from one in a short story or novel: it purports to be about the real Jimmy Meyers, and it appears in an abbreviated context, rather than an extended piece of ostensible fiction.

law will not find a statement of fact where none has been uttered. If a statement of critical opinion is based on assumed, nondefamatory facts, the First Amendment forbids the law of libel from redressing the injury.

*Judgment of the Superior
Court affirmed.*