## (December 9, 1982)

■ JACOB SILBERMAN et al., Respondents, v PAUL GEORGES, Appellant. — Judgment, Supreme Court, New York County (Wright, J.), entered January 29, 1982, unanimously reversed, on the law, and the complaint dismissed, with costs (one bill). This defamation case should not have gone to the jury, the "statement" made by defendant in his obviously allegorical and symbolic painting being one of critical opinion only at most and constituting no accusation of criminal or antisocial conduct. Further, the fair meaning of the picture does not exceed appropriate comment, nor was there any showing of malice whatever. In addition, plaintiffs were not damaged in any way by defendant's expression. It is to be noted that the Trial Justice himself had grave doubt, as demonstrated by his expressions on a motion to set aside the jury's verdict for plaintiffs, that a case had been made out. The difficulty was that, though appropriate respect was accorded the jury's function in deciding issues of fact, the court should have decided the question of law of whether plaintiffs had, at a minimum, presented sufficient evidence to raise a question of fact to go to a jury. (*Steinman v Di Roberts,* 23 AD2d 693.) The instrument by which plaintiffs-respondents claim to have been libeled is a painting called "The Mugging of the Muse," exhibited [for which read "published"] before the Alliance of Figurative Artists prior to the commencement of this action. The plaintiffs and defendant, all three of them artists known in the world of painting, had been friends for some time. They had come to a parting of the ways as the culmination of a dispute over refinements of their respective views of aspects of their art. Against the background of this prologue, defendant painted the offending picture, and presented it at one or more showings, and also permitted its magazine publication, to — it is claimed — the injury of plaintiffs. The picture shows an apparent attempt at assassination on a city street by three males, armed with knives, upon a barefoot woman, scantily draped in a red cloth, the appearance of which suggests that it might be a bath

towel. This scene is observed by a blue-winged cherub, standing between a hydrant, from which is spewing forth a fluid of the same color as the towel, and a brick wall, the lower aspect of which is covered by a yellowish overlay. The only other details are a collared brown, otherwise nondescript dog confronting the attackers, and a bent stanchion bearing a "no standing" sign. A crepuscular background of purplish hue contrasts with nearer overhead lighting, suggesting a street corner lamp. The only clue found within the picture, which might suggest identity of any of the actors, is supplied by masks on the faces of the two "downstage" assassins, claimed by plaintiffs to depict them. Quite obviously the trial jury found by its verdict that this was so intended by defendant. Indeed, part of the evidence at trial had been that, at a slide presentation of the subject picture, the audience had reacted with a gasp of recognition when that slide flashed upon the screen. There is no serious question of fact that the resemblance between the masks and the plaintiffs was more than coincidental and that they were the persons depicted. Defendant avers that, in any event, the portrayal was allegorical only and constituted no more than an expression of opinion. Plaintiffs claim that, to the contrary, the depiction held them up to ridicule and scorn, that they had been equated with muggers and robbers and accused of criminal conduct, that their reputations had been impaired, and that they had been cast in a derogatory and socially unacceptable light. This does not comport with any reasonable interpretation of the evidence in the case. The picture; viewed as through written words, may be described as "no more than rhetorical hyperbole." (See *Greenbelt Pub. Assn. v Bresler*, 398 US 6, 14.) And the very presence of the cherub and the bloody hydrant underscores the fanciful nature of the presentation. For the purpose of this disposition there is no necessity to consider the question of whether libel may be committed through a picture as it might be via a writing. We assume that one may be deemed the equivalent of the other. The picture could not be intended, viewed by any reasonable person, as an accusation by defendant that either plaintiff had actually participated in an assault or related crime such as attempted homicide, or had any intention of so doing. It is undoubtedly an allegory in that it uses persons and symbols to convey a hidden meaning which must be extracted by a ratiocinative process, possibly entirely speculative. In its worse possible aspect, it accuses plaintiffs of engaging in destruction of something symbolized by the lady in red. In the context provided by the factual background and the use of the word "Muse", that figure could be representative only of the arts; therefore, the painting states that plaintiffs' artistic beliefs and activities are destructive of the arts. It says nothing more. Far worse commentary is written almost daily by newspaper and magazine critics of every aspect of the arts and is deemed to be no more than an expression of opinion. Further, there was no proof of injury to plaintiffs. The picture's effect might well have been extreme embarrassment, the probable result of any well-aimed critical shaft, but that is not cognizable injury. (See *Salomone v MacMillan Pub. Co.*, 77 AD2d 501.) Nor is a showing of intent on defendant's part to assure that plaintiffs would be recognized as his targets indicative of malice; neither gross irresponsibility nor reckless disregard can be inferred from the fact that defendant, while in work on his picture, gave no attention to warnings that its characters portrayed plaintiffs. (*Gertz v Robert Welch, Inc.*, 418 US 323, 349.) The painting, viewed as though it were a writing, did not "expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community" (*Mencher v Chesley*, 297 NY 94, 100). No such inference was demonstrated. Indeed, special damages were neither pleaded nor proven in this case, nor was there a claim of libel per se, and, on this basis alone, it should not have

gone to the jury. (*Moran v Hearst Corp.*, 50 AD2d 527, affd 40 NY2d 1071.) Concur — Murphy, P. J., Carro, Markewich, Bloom and Lynch, JJ.