KENNETH T. LYONS & others vs. NEW MASS MEDIA, INC.
& another.

Suffolk. May 5, 1983. — August 30, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Libel and Slander. Malice. Constitutional Law*, Federal preemption,
Libel and slander. *Practice, Civil*, Directed verdict.

Whether the plaintiffs in a libel action, the president of a labor union and
an attorney who had represented the union, were public figures was a
question of fact to be resolved by the jury, where there were conflict-
ing contentions as to whether the plaintiffs had voluntarily injected
themselves into the public controversy giving rise to the publication of
the newspaper article in question. [54-56]
The circumstances in which a newspaper reporter wrote an article about
a controversial union election, including his reliance on biased sources,
made the issue of actual malice a question of fact to be resolved by the
jury. [56-58]
Where a newspaper article about a controversial union election stated
that an attorney retained by the union had refused to act on legitimate
grievances of union members and had passed on confidential informa-
tion to an employer and that the union's president had exercised im-
proper control of the union and personally had hired and fired na-
tional officers of the union, the defendants in a resulting libel action
were not entitled to summary judgment on the ground that the
statements in the article were nonactionable statements of opinion.
[59-61]
There was no merit to a contention made by the defendants in a libel ac-
tion that the plaintiff was libel-proof as a matter of law because of
prior adverse publicity, as evidenced by the numerous defamation ac-
tions he had initiated. [61]

CIVIL ACTION commmenced in the Superior Court
Department on October 30, 1978.

Motions for summary judgment were heard by *Urbano*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Robert H. Goldman (Roberta A. Schreiber* with him) for the plaintiffs.

*Stephen H. Oleskey (Christina L. Harms* with him) for the defendants.

LYNCH, J. This defamation case has as its genesis an article published during the summer of 1978 by the defendant New Mass Media, Inc. (New Mass Media), during a heated campaign between two unions seeking election as bargaining agent for municipal employees in Springfield. The plaintiffs Kenneth T. Lyons, Ralph L. Atkins, and the National Association of Government Employees, Inc. (NAGE), seek redress for certain allegedly defamatory statements reported in the weekly newspaper, Valley Advocate, owned by New Mass Media. The article in dispute, entitled "Springfield Union Election Stirs Controversy," was written by the defendant Harvey Lipman, a reporter for the newspaper.

After discovery was completed, the defendants, New Mass Media and Lipman, filed a motion for summary judgment on all counts pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). A judge of the Superior Court allowed the motion as to Lyons and to NAGE but denied it as to Atkins. Lyons and NAGE appealed from the entry of summary judgment against them. New Mass Media and Lipman filed a motion with the judge to report the denial of the summary judgment motion as to Atkins. This motion to report was allowed and the report was consolidated with the plaintiffs' appeals. Subsequently, the defendants filed an application for direct appellate review which we granted. We now reverse the entry of summary judgment against Lyons and NAGE, affirm the denial of summary judgment as to Atkins, and remand the case for trial.

From the record and the exhibits presented below, the facts considered in the light most favorable to the plaintiffs, *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970), are as follows. In January, 1978, after the collective bargaining agreement between the city of Springfield and the American Federation of State, County, and Municipal Employees

(AFSCME) terminated, NAGE petitioned to be certified as the exclusive collective bargaining representative for certain units of Springfield's municipal employees. NAGE, a non-profit Delaware corporation, is a labor union. Lyons is the national president of NAGE. Atkins is an attorney who was retained by NAGE to provide certain legal services for members of the International Brotherhood of Police Officers (IBPO), a division of NAGE, in western Massachusetts.

The Labor Relations Commission designated September 14, 1978, as the date for the representation election. Mark D'Aguanno, a national vice president of NAGE, coordinated the union's Springfield campaign activities. D'Aguanno kept Lyons informed as to the progress of the campaign. In his deposition, Lipman testified that shortly before the election, James Bollen, a field communicator for AFSCME, talked to him. Lipman testified that Bollen informed him of the prospective union election between NAGE and AFSCME. Bollen made certain claims about NAGE and told Lipman to contact Norman Nardi. Bollen told Lipman that Nardi was an Agawam policeman who had been involved in the town's chapter of IBPO and that Nardi would provide information about that chapter's dissatisfaction with NAGE.[1]

Lipman testified that he subsequently telephoned Nardi. A substantial portion of the newspaper article which is at issue here related to several charges made by Nardi during this interview. As reported by Lipman, Nardi's comments were extremely censorious of NAGE, Lyons, and Atkins. Lipman wrote that Nardi alleged that NAGE was "nothing more than a family business posing as a union" and that "the national president, Kenneth Lyons, owns the business. [He] . . . hires and fires national officers and . . . has family members on the payroll." Lipman also reported that "Nardi suspects that union attorneys were passing confidential

---

[1] On July 29, 1978, the Agawam chapter of IBPO voted to terminate its affiliation with IBPO.

information to city officials" and specifically accused Atkins of violating union confidences. Lipman wrote that the Agawam police were suing NAGE for their back dues as a result of the alleged failure of the union's attorneys to represent its members on grievances against the town.

Lipman further testified that, after his conversation with Nardi, he attempted to reach both Lyons and Atkins by telephone but was unsuccessful in each attempt. After these initial efforts, Lipman made no further attempts to speak to Atkins or Lyons, although he realized that the charges against Atkins were serious. Lipman did speak with D'Aguanno. In his affidavit, D'Aguanno stated that he told Lipman that Nardi's charges were false. Lipman's article recounting these conversations and the controversy appeared in the September 11, 1978, issue of Valley Advocate which was available at newsstands.

1. The first issue which we must address is the proper legal status of Lyons and Atkins for the purposes of this defamation suit.[2] In their motion for summary judgment, the defendants alleged that both Atkins and Lyons were public figures, as defined by the United States Supreme Court in *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 351 (1974), and that, as such, to prevail in this suit the plaintiffs must demonstrate that the article was published with knowledge of its falsity or with reckless disregard whether it was false or not. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-280 (1964). See *Curtis Publishing Co.* v. *Butts*, 388 U.S. 130, 162 (1967) (extending the *New York Times* standard to defamatory criticism of public figures). In his decision granting summary judgment against Lyons the judge concluded that Lyons "is a public figure for the range of issues involved in this case." Although the judge did not make an explicit finding about Atkins' status, it is a fair inference that in denying the summary judgment motion as to Atkins he determined that Atkins was not a public figure.

---

[2] NAGE concedes that it is a public figure for the purposes of this suit. See *infra* at 56.

We have previously stated that in a case tried to a jury, the question whether a plaintiff is a public figure "is a question for the jury to answer after instructions by the judge on the applicable law and on what facts must be found to constitute the plaintiff . . . a public figure," unless "the facts bearing thereon are uncontested or agreed by the parties." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862-863 (1975). Clearly the parties here do not agree on the essential facts and it would appear that a jury question is presented. However, the defendants in their motion for summary judgment contend that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553-554 (1976). Under this standard, the defendants' motion must necessarily fail if they do not "establish the absence of a genuine issue of material fact" or if the opposing party "establish[es] that there is a genuine, triable issue." *Id.* at 554. *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970). We therefore consider whether there is a genuine issue of material fact as to the public figure status of Atkins and Lyons.

The United States Supreme Court set forth the standards for determining whether an individual is a public or a private figure in *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). In *Gertz*, the Court distinguished between two classes of public figures: those people deemed public figures for all purposes and those who become public figures "for a limited range of issues." *Id.* at 351. The defendants do not claim that either Atkins or Lyons is an all-purpose public figure but rather urge that they are public figures for the issues presented in this case. To be considered a limited public figure an individual must have voluntarily injected himself into a particular public controversy in an attempt to influence its outcome. *Gertz, supra* at 351-352. Determining whether these conditions exist necessitates "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 352.

The defendants urge that Atkins' involvement in the NAGE union activities satisfies the requirements of *Gertz.* They assert that Atkins has actively solicited appearances in the media, with full knowledge that his statements would subject him to public scrutiny, and that, consequently, Atkins himself became an issue in the election campaign. The plaintiffs respond that Atkins' role in the election campaign was minimal and that he had ceased active representation of members of the IBPO in 1977. We conclude from these conflicting contentions that a genuine issue of material fact has been presented and that the motion for summary judgment against Atkins, to the extent that it was based on this issue, was properly denied.

The question of Lyons' public figure status is more problematic. However, we conclude that for the purpose of evaluating a motion for summary judgment the same result must follow. The defendants argue that Lyons, as president of NAGE, which is concededly a public figure, is necessarily a public figure for all disputes involving the union. They also assert that the fact that Lyons was president of NAGE became an issue in the campaign. The plaintiffs dispute the defendants' assertion that NAGE's public figure status must necessarily be imputed to Lyons. They note that Lyons is not involved directly in every union election campaign and they contend that Lyons did not directly inject himself into the Springfield election. Since under *Gertz* the particular controversy giving rise to the defamation must be considered, we conclude that a material issue of fact exists which appropriately should be resolved by a jury. Therefore, since in granting the summary judgment motion the judge determined that Lyons was a public figure, that decision must be reversed.

2. The plaintiff NAGE concedes that it is a public figure for the purposes of this defamation suit. Accordingly, in order to prevail at trial, NAGE must prove by clear and convincing evidence that the statements at issue were published with knowledge of their falsity or reckless disregard for their truth or falsity. *New York Times Co.* v.

*Sullivan,* 376 U.S. 254, 280 (1964); *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 342 (1974). However, on a motion for summary judgment "the defendant [is] required to establish that on the evidence brought forward, considered with an indulgence in the plaintiff's favor, a jury could not reasonably conclude that the plaintiff had shouldered and carried the burden above mentioned." *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.,* 379 Mass. 220, 231 (1979). We conclude that the defendants have not met their burden of demonstrating the absence of genuine issues of material fact. In light of our disposition of this issue, for the purposes of considering this summary judgment motion, we shall assume that Lyons and Atkins are public figures and at the trial will also have to meet the more demanding standard of proving actual malice.

The test of whether an article was published with knowledge of its falsity or reckless disregard for its falsity involves a subjective standard. The jury must find that the defendant entertained serious doubts as to the veracity of the statements published. *St. Amant* v. *Thompson,* 390 U.S. 727, 730-731 (1968). *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 867-868 (1975). However, the jury may conclude that such actual malice existed based on inferences drawn from objective evidence "since it would perhaps be rare for a defendant in such a circumstance to admit to having had serious, unresolved doubts." *Id.* at 868.

A major basis for inferring actual malice involves examination of the sources used by the reporter: "[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant, supra* at 732. *National Ass'n of Gov't Employees, Inc., supra* at 232. In this case, the reporter Lipman's primary sources were an AFSCME official, Bollen, and a dissatisfied former NAGE union member, Nardi. Both Bollen and Nardi were at the time of their conversations with Lipman involved in serious, acrimonious disputes with NAGE. Neither can be considered an unbiased source. Whether Lipman's reliance on these sources was proper in

the context of this case presents a material issue of fact which should be determined by the trier of fact.

The defendants assert that Lipman's deposition testimony demonstrates that he had no knowledge or belief that his article was in any part false. However, the defendant cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant, supra* at 732. When the inferences drawn from the testimony presented are viewed in the light most favorable to the plaintiffs, it is clear that each plaintiff has averred a sufficient quantum of evidence on the issue of actual malice to defeat a motion for summary judgment against NAGE and Lyons, and to warrant denial of the motion with respect to Atkins.

3.  The defendants also claim that they are entitled to the protection of the *New York Times* actual malice standard regardless of the private or public figure status of the plaintiffs, by reason of the fact that this story involved a labor dispute. This circumstance, the defendants contend, implicates Federal labor law, and thus preempts State libel law to the extent of requiring proof of actual malice in a defamation action. See *Old Dominion Branch No. 496, National Ass'n of Letter Carriers* v. *Austin,* 418 U.S. 264, 273 (1974); *Linn* v. *United Plant Workers, Local 114,* 383 U.S. 53, 61 (1966); *Tosti* v. *Ayik,* 386 Mass. 721, 723 (1982). We do not address the merits of this contention. We note that even if the rule of these cases applies here, a proposition not without uncertainty, the question on the motion for summary judgment remains whether there is a genuine issue of material fact to be determined. Since we have concluded that such an issue exists in this case with respect to the question of malice, acceptance of the defendants' position would not alter our decision here.

Similarly, the defendants claim that this news article is protected by the Massachusetts common law qualified privilege of fair comment. See *Twohig* v. *Boston Herald Traveler Corp.,* 346 Mass. 654, 655-656 (1964); *Boston*

*Nutrition Soc'y* v. *Stare,* 342 Mass. 439, 443 (1961). However, the defendants concede that the fair comment privilege is not broader than the *New York Times* actual malice standard. Accordingly, for the purpose of evaluating the motion for summary judgment, the same analysis discussed above applies to this argument.[3]

4. The defendants next contend that they are entitled to summary judgment because the alleged libelous statements are opinions based upon disclosed or fairly inferred facts and, as such, are absolutely privileged under the First Amendment. See *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 339-340 (1974). *Myers* v. *Boston Magazine Co.,* 380 Mass. 336, 338-339 (1980). We disagree with the defendants' characterization of the statements.

Fundamental constitutional law teaches that: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may be, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz, supra* at 339-340. However, it is equally well settled that "there is no constitutional value in false statements of fact." *Id.* at 340. *Pritsker* v. *Brudnoy,* 389 Mass. 776 (1983). Distinguishing whether a challenged statement is one of fact or opinion has been characterized as "a question of law . . . if the statement unambiguously constitutes either fact or opinion. Where, . . . however, the allegedly libelous remarks could have been understood by the average reader in either sense, the issue must be left to the jury's determination." *Myers* v. *Boston Magazine Co., supra* at 339-340, quoting *Good Gov't Group of Seal Beach, Inc.* v. *Superior Court,* 22 Cal.

---

[3] The defendants also urge us to adopt the "neutral reportage" standard applied in *Edwards* v. *National Audubon Soc'y,* 556 F.2d 113, 120 (2d Cir.), cert. denied sub nom. *Edwards* v. *New York Times Co.,* 434 U.S. 1002 (1977). On the record before us, it does not appear that this argument was a part of the defendants' motion for summary judgment. Given the procedural posture of this case, we think it is inappropriate to consider here whether we should change settled Massachusetts law and we decline the defendants' invitation to do so.

3d 672, 682 (1978), cert. denied, 441 U.S. 961 (1979). The test for a rule 56 motion is whether the allegedly libelous statement "can reasonably be read as stating a fact." *Myers, supra* at 340 & nn. 4, 5.

As we noted above, the article written by Lipman reported serious charges of misconduct made by Nardi against Atkins, Lyons, and NAGE. Nardi claimed that union attorneys retained by NAGE for the IBPO local refused to act on legitimate grievances of the Agawam police. He specifically alleged that Atkins, the IBPO attorney, improperly passed along confidential information to town officials, to the detriment of the union members. Additionally, Nardi asserted that Lyons exercised improper control of the union and personally hired and fired national officers.

As we stated in *Myers, supra* at 341, quoting *Peck* v. *Wakefield Item Co.*, 280 Mass. 453 (1932), "The primary question for determination . . . is whether 'the words themselves, taken in their natural sense, and without a forced or strained construction' can be understood as stating a fact." We think that these allegations by Nardi are clearly statements of fact. The meaning of these statements is neither imprecise nor open to speculation. Cf. *Cole* v. *Westinghouse Broadcasting Co.*, 386 Mass. 303, 312 (1982) (statement that a reporter is sloppy and irresponsible with bad techniques is a matter of opinion). These statements were accusations which can be proved true or false at trial. See *Edwards* v. *National Audubon Soc'y*, 556 F.2d 113, 121-122 (2d Cir.), cert. denied sub nom. *Edwards* v. *New York Times Co.*, 434 U.S. 1002 (1977) (assertion that plaintiffs were "paid to lie" distinguished from assertion that plaintiffs were "liars" as the former phrase implied actual corruption and can be proved true or false whereas the latter epithet merely expressed an opinion which cannot be held libelous however mistaken the opinion might be). Cf. *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), cert. denied sub nom. *Hotchner* v. *Doubleday & Co.*, 434 U.S. 834 (1977) ("An assertion that cannot be proved false cannot be held libellous.") We conclude that the news-

paper's statements in the instant case cannnot be termined "opinions" as a matter of law. Since the plaintiffs in their affidavits and deposition testimony have vigorously challenged these statements, a genuine issue of material fact as to the accuracy of the statements exists which must be resolved by the trier of fact.

5. The defendants' final contention is that they are entitled to summary judgment against Lyons on the ground that Lyons is libel-proof as a matter of law because of prior adverse publicity, as evidenced by the numerous defamation actions he has initiated. This claim that the plaintiff Lyons is libel-proof does not appear in the record of the defendants' motion for summary judgment nor apparently was this issue decided by the judge. The defendants' primary reliance for this doctrine is *Cardillo* v. *Doubleday & Co.*, 518 F.2d 638 (2d Cir. 1975). In that case, the court concluded that "as a matter of law [the plaintiff] is . . . libel-proof, i.e., so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case." *Id.* at 639. Subsequently, however, that court cautioned against extending that libel-proof doctrine beyond that case's "basic factual context." *Buckley* v. *Littell*, 539 F.2d 882, 888-889 (2d Cir. 1976), cert. denied, 429 U.S. 1062 (1977). We believe that application of the libel-proof doctrine is not appropriate in this case. We reject any suggestion that a plaintiff should be considered libel-proof and barred as a matter of law from bringing a defamation suit simply because he has been a plaintiff in several other defamation cases.[4]

6. The order entering summary judgment for the defendants against Lyons and NAGE is reversed and the order denying summary judgment against Atkins is affirmed. The case is remanded to the Superior Court for trial.

*So ordered.*

---

[4] In their cross appeal, the plaintiffs raised an objection to the introduction by the defendants of several exhibits relating to this issue. In view of our disposition of this matter, we need not consider the plaintiffs' objection.