BUDGET TERMITE & PEST CONTROL, INC.

v.

Donald BOUSQUET.

No. 2001–271–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 2002.

John T. Longo, Stephen C. Mackie, Providence, for Plaintiff.

Patrick A. Fayle, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

As Yogi Berra may once have observed, humor can be a funny thing. What tickles one person's funny bone can boil another's blood. In this case, the plaintiff, Budget Termite & Pest Control, Inc. a local exterminator, appeals ·from a summary judg-

ment in favor of the defendant, cartoonist Donald Bousquet. The plaintiff contends that the hearing justice erred in determining that a cartoon created by the defendant and published in the comics section of a Sunday newspaper was incapable of bearing a defamatory meaning vis-à-vis the plaintiff. It believes that the defendant's cartoon was unequivocally defamatory because it portrayed two of the plaintiff's employees as bumbling, treacherous arsonists. A single justice of this Court directed the parties to show cause why the appeal should not be summarily decided. Because they have not done so, we decide the appeal at this time.

The defendant is a local cartoonist whose drawings often lampoon Rhode Island life and culture. On August 8, 1999, the Providence Journal newspaper published one of defendant's cartoons on the front page of its Sunday comics section. Under the title line "Bousquet," the cartoon depicts two goofy-looking pest control workers. One of them wears a shirt with the words "Budget Pest Control" on it. This worker is grinning maniacally while holding a gas can in his hand. Behind him a house is all ablaze. His fellow co-worker (with his shirt partially obscured so only "Pest Control" can be seen) is assuring a distraught woman standing in front of them as follows: "Easy, now, ma'am. This is Billy Bob's first day on the job and them carpenter ants can be real stubborn."

Believing it was the butt of this cartoon, plaintiff sued defendant for defamation. In his deposition testimony, defendant swore that he had not heard of plaintiff when he composed the cartoon. He said that there was no particular reason that he used the name "Budget Pest Control" in his cartoon; rather, "it just came into my head." He admitted, however, that he had done some cartoon work for New England Pest Control, a competitor of plaintiff's,

between 1993 and 1999; that is, he drew cartoons or submitted his previous artwork for use in New England Pest Control's advertising during this period. According to defendant, however, he could recall at least one cartoon he drew that portrayed New England Pest Control in a negative light, but apparently none of his other work for this entity referred to plaintiff or cast any negative aspersions on its employees or the quality of its work.

George Cardoza, plaintiff's president, testified at his deposition that various employees and colleagues had mentioned to him that the cartoon in question depicted plaintiff in a disparaging manner. Although Cardoza testified that "virtually everyone refers to us as Budget Pest Control," he admitted that all company advertising, signs, and uniforms listed the name as "Budget Termite & Pest Control."

Eventually, defendant moved for summary judgment, which the court granted after conducting a hearing. Focusing on the context of the communication as a cartoon in the comics section of a Sunday newspaper, the court ruled that the communication was not "capable of bearing a defamatory meaning without actually enlarging the communication beyond the natural meaning of the cartoon."

On appeal plaintiff argues that in granting the motion, the motion justice improperly focused on the negligible difference between its legal name, "Budget Termite and Pest Control," and the name used in the cartoon, "Budged Pest Control." It contends that just as someone would identify a certain car company from the statement "All Fords are lemons," a reader of this cartoon would identify plaintiff as employing two dangerous nitwits. It maintains that the cartoon adversely affected its business reputation because one of the cartoon characters was shown to be wearing a "Budget Pest Control" shirt. It

further argues that the cartoon was per se libelous because it portrayed plaintiff's employees as incompetent pyromaniacs. The plaintiff also insists that in deciding whether the cartoon was capable of a defamatory meaning, the motion justice should have taken into account the fact that defendant provided cartoon advertising for one of plaintiff's competitors.

The defendant responds that the cartoon was nothing more than an attempt on his part to be humorous in the Sunday comics page. He posits that the published location and context of the cartoon in the Sunday comics page demonstrates that the cartoon was not capable of a defamatory construction. He also points out that the cartoon never mentioned plaintiff's actual name, using only a generic, fictitious name to designate the "budget" exterminator shown in the cartoon.

 "Whether the meaning of a particular communication is defamatory is a question of law for the court to decide rather than a factual issue for a jury to determine." *Beattie v. Fleet National Bank*, 746 A.2d 717, 721 (R.I.2000); *see also Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1142 (R.I. 2002). "A defamation action requires a plaintiff to prove '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher;' and (d) damages, unless the statement is actionable irrespective of special harm." *Swerdlick v. Koch*, 721 A.2d 849, 859–60 (R.I.1998) (quoting *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I.1989)). Words that are capable of causing injury to a business's reputation are in their nature defamatory. *Id.* at 860. In determining whether a particular communication is capable of bearing a defamatory meaning, "the court must examine the alleged de-

famatory words in the context of the publication in which they appear as a whole * * *." *Id.* "The decisive inquiry, however, 'is what the person * * * to whom the communication was published reasonably understood as the meaning intended to be expressed.'" *Id.* (quoting *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1343 (R.I.1986)).

 Thus, the key issue on this appeal is whether the ordinary readers of this cartoon as it appeared in the comics section of the Sunday newspaper would have reasonably understood that the author was making a defamatory communication about this particular plaintiff. This inquiry focuses on the fact that a defamatory statement must be a false statement concerning a particular existing entity. "To satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed." *Croixland Properties Limited Partnership v. Corcoran*, 174 F.3d 213, 216 (D.C.Cir.1999); *see also Carey v. The Evening Call Publishing Co.*, 74 R.I. 473, 478–79, 62 A.2d 327, 330 (1948); *Granada Biosciences, Inc. v. Forbes, Inc.*, 49 S.W.3d 610, 616, 620–21 (Tex.Ct.App.2001). "[T]he plaintiff must establish some reasonable personal application of the words to himself. Beyond that, if the words have no personal application to the plaintiff, they are not actionable by him." *Hodgins Kennels, Inc. v. Durbin*, 170 Mich.App. 474, 429 N.W.2d 189, 193 (1988).

The two aspects of this cartoon that conceivably could have connected it to this particular plaintiff were (1) the cartoon showed characters who worked for the same type of business as plaintiff's business and (2) one cartoon character wore a shirt with a company name similar to plaintiff's name. Other factors, however,

militated against a conclusion that the cartoon was a defamatory communication that the author directed against any particular individual or entity, let alone against this specific plaintiff. First, the exaggerated comic tone of the cartoon and its published location on the Sunday comics page suggested that the author designed the cartoon to be humorous rather than as a piece of negative advertising or as a factual statement about an existing business and its employees. Second, use of the generic word "Budget" as the first name of the depicted pest-control company furthered the humor of the cartoon by implying that this "budget" outfit was so cut-rate and shoddy that it burned down the house of a customer to rid the premises of "stubborn" carpenter ants—a proposition so absurd and outlandish that no reasonable reader could construe it as a truthful factual assertion about this plaintiff or any other exterminator. Absent the inclusion of more specific details—such as the proper name of plaintiff on the cartoon character's shirt or other objectively discernable data suggesting that the cartoon was aimed at a particular existing entity or its employees—we conclude that the mere use of the generic name "Budget Pest Control" was not enough to connect plaintiff with the cartoon, especially given its published location in the comics section of the newspaper.

 Moreover, even were we to assume *arguendo* that ordinary readers of the cartoon reasonably could have construed it as referring to plaintiff's business, summary judgment was proper because such readers of the comics section would not understand it to contain an assertion of fact about plaintiff—only, at best, a humorous idea that did not imply the existence of one or more undisclosed defamatory facts. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805 (1974). Thus, "a statement in the form of an opinion may be defamatory and therefore actionable if and only if 'it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'" *Beattie,* 746 A.2d at 721 (quoting *Healey,* 555 A.2d at 324). If a statement cannot reasonably be viewed as alleging defamatory facts, summary judgment is appropriate. *See Aldoupolis v. Globe Newspaper Co.,* 398 Mass. 731, 500 N.E.2d 794, 796 (1986). In determining whether a statement is merely an opinion that does not imply the existence of undisclosed defamatory facts, we consider the published context and "medium by which the statement is disseminated." *King v. Globe Newspaper Co.,* 400 Mass. 705, 512 N.E.2d 241, 244–45 (1987) (quoting *Cole v. Westinghouse Broadcasting Co.,* 386 Mass. 303, 435 N.E.2d 2d 1021, 1025 (1982)).

In our judgment, the ordinary readers of the comics section of a Sunday newspaper would not usually interpret the cartoons therein as communicating true or false factual assertions. "Cartoons are seldom vehicles by which facts are reported; quite the contrary, they are deliberate departures from reality designed forcefully, and sometimes viciously, to express opinion." *King,* 512 N.E.2d at 245 (quoting *Keller v. Miami Herald Publishing Co.,* 778 F.2d 711, 718 (11th Cir.1985)). "Reasonable readers are well aware that '[c]artoonists employ hyperbole, exaggeration, and caricature to communicate their messages * * *.'" *Id.* (quoting *Keller,* 778 F.2d at 716). Thus, in *King,* the Massachusetts Supreme Court held that a series

of cartoons depicting a former governor involved in various criminal and immoral acts was merely an expression of the author's opinion cast in a "form of expression that clearly draws upon overstatement and extravagant symbolism to make its point." *King*, 512 N.E.2d at 246. *See also Myers v. Boston Magazine Co.*, 380 Mass. 336, 403 N.E.2d 376, 379 (1980) (holding that a statement about the plaintiff being "enrolled in a course for remedial speaking" was a non-defamatory joke, when it appeared in a "Best & Worst" column and was accompanied by humorous subtitles and cartoons); *Scott v. News–Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699, 708 (1986) (holding that statements which appeared in a newspaper article that the plaintiff perjured himself on the sports page, that was "a traditional haven for cajoling, invective, and hyperbole," would most likely be construed as writer's opinion).

Similarly, we hold that the cartoon at issue here was not capable of a defamatory construction because the statements contained therein were not assertions of fact but "rhetorical, exaggerated means of expressing opinions" that did not imply the existence of undisclosed defamatory facts about plaintiff. *King*, 512 N.E.2d at 245. The defendant obviously intended the cartoon to be a humorous and hyperbolic depiction of the disastrous "workmanship" that a customer might encounter when dealing with a fly-by-night extermination company. And its appearance in the comics section of the Sunday newspaper effectively dispelled any reasonable perception that it could be viewed as an assertion of objective fact. We conclude that this cartoon was merely an exaggerated form of opinion, and thus incapable of a defamatory meaning. Numerous decisions of other courts have so found in similar or analogous situations.[1]

In light of the above analysis, it appears to us that the humorous published context of this communication is dispositive in determining whether it reasonably could be understood as defaming the plaintiff. When making this determination on a motion for summary judgment, the challenged communication must be looked at in the light most favorable to the nonmoving party. *See Buonanno v. Colmar Belting Co.*, 733 A.2d 712, 715 (R.I.1999). Summary judgment may be granted, however, when there are no material facts in dispute and the movant is entitled to judgment as a matter of law. *Id.* Given the form and context of this publication, a reasonable, ordinary reader could not plausibly construe the cartoon in question as containing a false statement of fact

---

1. *See, e.g., Mr. Chow of New York v. Ste. Jour Azur, S.A.*, 759 F.2d 219, 229 (2nd Cir.1985) (most metaphoric descriptions of food in a restaurant review were protected as rhetorical hyperbole); *Pring v. Penthouse International, Ltd.*, 695 F.2d 438, 443 (10th Cir.1982) (even though a reference to Miss Wyoming in a fiction story could be interpreted as referring to the plaintiff, it was not defamatory because "it is simply impossible to believe that a reader would not have understood that the charged portions [of the story] were pure fantasy and nothing else"); *Karl v. Donaldson, Lufkin & Jenrette Securities Corp.*, 78 F.Supp.2d 393, 402 (E.D.Pa.1999) (satirical videotape juxtaposing executive's receipt of post-merger severance package with film footage showing an Old West-style bank robbery was "clearly, to any reasonable viewer, a joke" and did not have a defamatory character); *Flip Side, Inc. v. Chicago Tribune Co.*, 206 Ill.App.3d 641, 151 Ill.Dec. 582, 564 N.E.2d 1244, 1253 (1 Dist.1990) (similarity of name between plaintiff and character in comic strip irrelevant because the "episode is all fanciful adventure and does not purport to be factual"); *Silberman v. Georges*, 91 A.D.2d 520, 456 N.Y.S.2d 395, 397 (1982) (painting that contained resemblances of the plaintiffs shown as muggers was non-defamatory because no reasonable person could view the painting as a statement that plaintiffs participated in an assault).

directed to this particular plaintiff. Even taking into account the defendant's past work for a competitor of the plaintiff—as well as Cardoza's testimony about how some of his colleagues and several of the plaintiff's employees reacted negatively to the cartoon—it does not appear that an ordinary reader could objectively and reasonably perceive that the cartoon was a defamatory statement of fact directed against or portraying this particular plaintiff.

Therefore, we deny the plaintiff's appeal and affirm the judgment.